[Crim. No. 3220.  In Bank.—June 26, 1930.]

THE PEOPLE, Respondent, v. GORDON STEWART NORTHCOTT, Appellant.

642

A. P. G. Steffes for Appellant.

U. S. Webb, Attorney-General, and John D. Richer and John L. Flynn, Deputies Attorney-General, for Respondent.

WASTE, C. J.—In an indictment returned by the grand jury of the county of Riverside the defendant was charged in three counts with the crime of murder. A fourth count, charging an entirely different offense, was dismissed upon motion of the district attorney. Upon his arraignment the defendant entered a plea of not guilty to each of the murder counts. After a prolonged trial he was found guilty as charged, and, the jury having failed to make any recommendation as to punishment, he was sentenced to suffer the extreme penalty. From the judgment and from the order denying his motion for a new trial he has prosecuted this appeal.

The record presents a most unpleasant and gruesome picture and, because of this, we deem it undesirable to set forth at length the disgusting and abhorrent details leading up to and surrounding the commission of the offenses of which the appellant stands convicted. It will be sufficient to summarize only enough of the evidence to show that the contention of the appellant that his conviction was unwarranted is without merit. In the first count of the indictment the appellant was charged with the unlawful killing of "a human being whose name is unknown." The evidence introduced by the prosecution in support of this charge tends to show that on February 2, 1928, the nude and headless body of a young boy of about eighteen years of age, apparently of Mexican extraction, was found in a

ditch by the side of Hudson Road, near Puente. The body was covered with a sack which had formerly contained chicken feed. An autopsy was performed, which disclosed that death had been caused by gunshot wounds, and that decapitation had apparently taken place immediately subsequent to death and probably not more than twenty-four hours prior to the discovery of the body. The appellant, in the presence of his nephew, the prosecution's chief witness, stated to his parents that he had killed a Mexican boy and left his body beside a road near Puente. On or about February 1, 1928, the appellant had been absent from his chicken ranch in Riverside County until late at night. Upon his return the following morning, he removed the head of a male person, resembling a Mexican, from the back of his automobile, and stated to his nephew that he had to kill the Mexican because he "knew too much." The clothes of the victim were destroyed by fire on the ranch, and an attempt was made to destroy the head by the same means; but it was impossible to develop a fire of sufficient heat intensity to completely destroy the head, and it was smashed to pieces with an ax. Small pieces of human skull were found at the place on the ranch where it was testified that the destruction by fire was attempted. The appellant was the owner of a .22-caliber Remington rifle which he had kept almost continuously at the ranch, and which he frequently carried in his machine. The rifle was found at the home of his father in Los Angeles, together with some .22 long rifle shells, Peters ammunition. The bullet which killed the Mexican boy was a .22 long rifle bullet, with the indication that it was Peters ammunition. There was testimony that the bullet had been fired from a rifle of the same model, make, type and caliber as the one owned by the appellant.

This evidence, in our opinion, amply supports the verdict on the first count. Appellant's contention that it is insufficient in that "no motive was shown to substantiate a charge of murder in the first degree" is without merit. There is the evidence to the effect that the homicide was perpetrated because the victim thereof "knew too much." Aside from this, however, the decision in *People* v. *Tom Woo*, 181 Cal. 315, 328 [184 Pac. 389], disposes of the contention now under consideration. It is therein declared:

"Appellants contend that the evidence is insufficient, particularly because of the absence of proof of motive. It is true the prosecution did not offer such proof. But, as has been declared in many cases, it is not necessary to establish a motive for the perpetration of an offense. A presumption of innocence arises in favor of a person accused of crime. This presumption is disputable and may be overcome by other evidence. The presence of a motive is evidence tending to prove guilt, for the reason that its tendency is to rebut the presumption of innocence. On the other hand, absence of motive tends to support the presumption of innocence. But the presence or absence of motive is essentially a question of fact, and, like any other fact, is not necessary to be proved if the crime can otherwise be established by sufficient competent evidence. So, . . . the absence of motive is a fact to be reckoned on the side of innocence, but if the proof of guilt is nevertheless sufficient to overthrow the presumption of innocence, the appellants must stand convicted, notwithstanding no motive has been shown." (See, also, *People* v. *Kelley,* 208 Cal. 387 [281 Pac. 609].)

Counts two and three of the indictment may well be considered together, for they are inseparably related. In these counts the appellant was charged with having unlawfully and feloniously murdered two minor boys named Nelson and Lewis Winslow. It was the theory of the prosecution that the appellant had kidnaped or abducted these boys, who were brothers, and brought them to his chicken ranch in order that he might practice a most unnatural and disgusting act upon them. The evidence very definitely establishes that the appellant is a moral pervert and degenerate of the very lowest type. When upon the stand in his own defense he readily admitted that for a number of years he had been addicted to the practice of the unnatural crime against nature. The Winslow boys disappeared at about 8 o'clock on the night of May 16, 1928, while returning to their home from a meeting of the boys' Model Yacht Club. At the time of their disappearance they were ten and twelve years of age, respectively, and had with them a library book on aeroplanes for boys and a toy banjo or ukulele fashioned out of a cigar-box, the finger-board of which contained two keys taken from an old violin which had been a

family heirloom. Two similar keys remained on the violin at home. Sanford Clark, a nephew of the appellant, who had been illegally brought into this country from Canada by the appellant and who, during his stay at the appellant's ranch, had repeatedly been subjected to the appellant's cruelty and lustful practices, was the principal witness against him. He testified, in substance, that the appellant brought these two boys to the ranch at about 10:30 o'clock on the night of their disappearance; that they were placed in one of the chicken unit houses where the appellant and the witness had been living; that he, the witness, was thereupon required by the appellant to remove his sleeping quarters to a vacant house situated on adjoining premises; that the boys were confined in this chicken-house unit for approximately ten days, the appellant remaining with them at night, and apparently giving vent to his unnatural desires; that during the period of their confinement the boys were not permitted to leave the shed in which they were held captive, their food being brought to them by the witness; that after he had held the boys for several days the appellant required the witness to dig a grave in one of the units of the chicken-houses sufficiently large to permit of the interment of the bodies of the two brothers; that he was also required by the appellant to burn the aeroplane book and toy banjo belonging to the boys; that the boys were then, in turn, murdered by being struck on the head several times with an ax; that the appellant required the witness to wield the ax which deprived one of the boys of his life, appellant, however, also taking a hand; that appellant had stated to the witness that he would require him to kill one of the boys so as to insure his silence; that after the boys had been thus brutally murdered, the appellant and the witness had carried their bodies to and placed them in the grave which had been prepared for them; that loose dirt was thereupon placed over the bodies, straw scattered over the ground, and chickens turned loose over the spot so that they might scratch the straw around and give to the place a natural appearance.

In corroboration of Sanford Clark's testimony the prosecution introduced evidence tending to show that during their incarceration the Winslow boys, apparently at appellant's suggestion and command, had written two letters to

their parents, informing them that they were well and happy and roving about the country; that the paper on which these letters had been written strongly resembled the fly-leaves of the aeroplane book which they had with them at the time of their disappearance; that the charred keys of the toy banjo were found upon the ranch; that the doorsill in each door of the chicken unit through which the bodies had been carried to their grave were found to be impregnated with human blood; that a strong and repulsive odor of decayed human flesh greeted the investigating officers when they opened the grave described by Sanford Clark; that the dirt removed from the grave was found to be saturated with human blood; that numerous finger, hand and foot bones, as well as finger and toe nails, and particles of human flesh and hair, were found in and about the grave; that an incompletely formed human tooth, apparently being one from a juvenile of eleven or twelve years of age, was found in the grave; that a piece of cloth resembling the material in the shirt worn by one of the Winslow boys at the time of his disappearance was also found; that the cap of the younger Winslow boy was recovered in one of the chicken units; and that the handles of the axes used to murder the boys were found to be soaked with human blood. There is also evidence to the effect that when suspicion was finally directed toward appellant and an investigation started, he fled to Canada and was returned here for trial only after he had vigorously resisted extradition proceedings. In the face of this evidence, it is difficult to justify appellant's contention as to its insufficiency to support a conviction. It is our conclusion that the evidence warranted his conviction on both counts two and three.

At the commencement of the trial and before the selection of the jury, the appellant, through his counsel, made three motions, viz., a motion that he be permitted to add the plea of "not guilty by reason of insanity" to the plea of "not guilty" theretofore entered; a motion that his sanity be determined as of the time of trial; and a motion for a continuance in order that he might procure more and better evidence in support of the foregoing motions and to aid his counsel to more adequately prepare for the trial. Each of the motions was denied, and the appellant now at-

tacks these rulings. Examination of the several affidavits submitted in support thereof has failed to convince us that the court below abused its discretion in so ruling. We do not propose to set out the contents of the various affidavits, nor to discuss the appellant's contention at any great length, for, during the course of the trial, it was made to satisfactorily appear that the court below had been imposed upon in that none of the affidavits had been sworn to before the notary whose signature and seal purported to appear thereon. That officer declared that he had neither signed his name nor affixed his official seal thereto. Under such circumstances, the motions were properly denied, and the court's action cannot be said to have been prejudicial to the appellant, even if it be assumed that the averments of the purported affidavits submitted in support thereof warranted the granting of the requested relief.

■ Appellant next urges that the court below erred in denying his challenge to the special venire. The challenge was placed upon the ground that the summoning officer was disqualified under section 1064 of the Penal Code, it being contended that the sheriff had been engaged in gathering evidence for the prosecution, and that any disqualification thus attaching to the sheriff inured to his deputy who had summoned the jury. It is also urged that this particular deputy had formed an opinion adverse to appellant by reason of an altercation arising out of a previous contact with appellant. On their *voir dire* examination both the sheriff and his deputy denied having formed an opinion as to the appellant's guilt, and nothing has been shown here calling for a conclusion that they were so biased or prejudiced as to disqualify them. In *People* v. *Hartman,* 130 Cal. 487, 488, 489 [62 Pac. 823], it is said that the condition of mind of the officer is "essentially a question of fact for the trial court to pass upon, and, as in the case of a juror challenged upon the ground of actual bias, it is only when the issue comes before this court as matter of law that it has jurisdiction to deal with it. Here the evidence is of a character that concludes us in holding that the denial of the challenge presents only an issue of fact. Under these conditions the action of the trial court will be upheld." This language is particularly pertinent to the present inquiry. In *People* v. *Le Doux,* 155 Cal. 535, 542,

543 [102 Pac. 517], strongly relied on by the appellant, it appeared that the summoning officer entertained an opinion as to the defendant's guilt. This served to disqualify him, and it was properly held in that case that the challenge to the venire summoned by him should have been allowed.

█ Contending that there was nothing in common between the charge contained in count one of the indictment and the charges contained in counts two and three thereof the appellant requested that he be accorded a separate trial on the so-called "headless Mexican" charge in order to preclude confusion. This request was denied, and the ruling is assigned as error. Among other things, section 954 of the Penal Code provides that an indictment, information or complaint may charge "two or more different offenses of the same class of crimes or offenses, under separate counts . . . provided, that the court in the interest of justice and for good cause shown, may, in its discretion, order that the different offenses or counts set forth in the indictment or information be tried separately . . . " Appellant has failed to point out wherein the joint trial of the several charges worked to his prejudice. His bald and unsupported statement is not sufficient. The evidence adduced upon the trial attests the propriety of the lower court's ruling in this regard.

█ During the progress of the trial the appellant addressed a letter to the judge presiding requesting permission to personally cross-examine certain of the prosecution's witnesses, asserting that he alone had the knowledge necessary "to bring out the truth." In making this request the appellant stated: "I do not want to have to discharge my attorneys, but, if there is no other way then I will have to." His letter also indicated that he was familiar with court procedure and had some knowledge of the law by reason of a correspondence course of study. At the next succeeding court session it was stated from the bench that the trial must proceed in an orderly and regular manner, and that it would therefore be necessary for the appellant to "elect one way or the other, to either take charge of his defense through counsel or through his own efforts." Appellant was then told that if he elected to take personal charge of the case and conduct his own defense he would be expected to abide by his election throughout the trial. The court

thereupon stated: "I think, as a matter of advice to the defendant and for the protection of his rights, that this case involves and will involve expert testimony; matters that require more or less technical knowledge; also technical knowledge on the part of counsel as to the character of evidence, propounding of questions put to expert witnesses; that requires a technical knowledge as to the manner of presenting such testimony in court; that no person who is not familiar and understands the propounding of those questions and examining the experts is fully competent to represent the defendant, unless it is handled by counsel who are familiar with that class of testimony to some extent at least. Another thing that I want to call to the defendant's attention is that if he has counsel he has the privilege to request his counsel to ask any question that he may desire him to ask of any witness in the case, by communicating that question to his counsel and his counsel putting the question to the witness, and if the question is a proper one or one that is relevant to the issues in the case, I believe that his counsel would and should present the question to the witness and he would obtain all the results that he would obtain by putting the question directly to the witness himself in person." Despite the advice of the court, the appellant elected to personally conduct his own defense, and he now contends that the court's attitude and ruling in this matter served to deprive him of certain constitutional and statutory rights. Reference is made to that provision of the federal Constitution wherein it is declared that in all criminal cases the accused is entitled "to have the assistance of counsel for his defense" and to section 686 of the Penal Code, which, so far as material here, appears to be the counterpart of section 13 of article I of the state Constitution, wherein it is provided: "In a criminal action the defendant is entitled . . . to be allowed counsel as in civil actions, or to appear and defend in person and with counsel." Relying on these provisions, the appellant makes the point that he was entitled, as of right, to conduct his case personally and through counsel, determining at his pleasure whether he would examine or cross-examine the various witnesses called or permit counsel to do so. With this as a premise, he contends that the court below committed reversible error when it required him, involuntarily,

to elect whether his defense was to be personally conducted or through counsel. We find no merit in the contention. At no time during the trial was the appellant denied the assistance of counsel. The trial court merely ruled, and properly so, that either the appellant or his counsel had to take charge of the actual conduct of the defense, the reason for the rule obviously being to preserve the orderly procedure of the court. That appellant had the assistance of counsel after he had elected to take personal charge of his defense clearly appears from the record. Upon numerous occasions appellant was informed that he was free to receive the assistance of counsel either in or out of court, that matter being of no concern to the court so long as the trial was conducted in an orderly manner and along the lines theretofore suggested from the bench. We are not prepared to say that the court abused its discretion in this regard. Moreover, it has been held that every invasion of even a constitutional right need not necessarily require a reversal. (*People* v. *Mayfield*, 85 Cal. App. 77 [259 Pac. 75].) That the appellant is guilty of the crimes charged, the record leaves no reasonable doubt. He was accorded every conceivable privilege and courtesy in the conduct of his defense. In the absence of a clear showing of prejudice we would be hesitant to order a reversal, even if it were to be assumed that appellant's constitutional rights had been invaded by the ruling now complained of.

■ After he had thus assumed personal charge of his defense, and on January 21, 1929, the appellant moved the court for a continuance on the ground that his physical condition at the time was such as to preclude him from effectively proceeding. A recess was thereupon ordered by the trial court to permit of a medical examination of the appellant being made. When court reconvened, the examining physicians testified, in substance, that appellant was merely suffering from a slight cold which was accompanied by an elevation of temperature of only two-tenths of one degree. Each physician gave as his opinion that appellant was physically capable of proceeding with the trial. Upon this showing the motion for a continuance was denied. On the following morning the motion was renewed, appellant urging that his eyes were swollen to such an extent as not to permit of their use. At this time, and upon recommen-

dation of the examining physician, a two-day continuance was granted to the appellant. When the case was again called for trial on January 24, 1929, appellant again requested a continuance, this time on the ground that he had been unable to properly prepare to resume the trial after his illness. In denying the request the court below informed appellant that it had no desire to deprive him of any right, but that his inability to proceed had been brought about by his own actions. Inspection of the record readily discloses the propriety of the court's attitude. There was need that something be done to terminate appellant's dilatory tactics and to expedite the trial. At the time the request was made, the prosecution was still putting in its case in chief, and appellant appears to have satisfactorily conducted the cross-examination of the witnesses called. A trial court is allowed much discretion in the matter of granting or refusing applications for postponements or continuances, and its action thereon will not be disturbed upon appeal unless there has been a plain abuse of that discretion. (8 Cal. Jur. 210, sec. 281.)

At a later date the appellant asked leave of court to again associate counsel with him, intimating that if the request was granted he would sporadically and when necessary call upon counsel to conduct the examination of witnesses and otherwise assume control of the defense. Consistent with its earlier ruling, the court again informed the appellant that he "must either have counsel or appear in person. You cannot appear by both." It was then suggested to him that he move to have counsel "reinstated as your attorney of record [to] conduct your case or to proceed on your own line. As to what [counsel] might do about assisting you or anything, that is no concern of the court's." The court very properly stated to the appellant that it did not intend to conduct the case by piecemeal, adding: "I cannot recognize you for one purpose . . . and recognize your counsel for another purpose. It interferes with the orderly progress of the trial." Appellant apparently agreed with the court and accepted its ruling, for he stated: "That is perfectly desirable [agreeable?], your Honor." What we have already said along this line sufficiently disposes of the present assignment of error, which is without merit.

■ The trial court is asserted to have erroneously ruled that the prosecution might prove, without preliminary inquiry as to their competency, certain extrajudicial statements and confessions purported to have been made by the appellant. In support of this contention appellant cites the decision in *People* v. *Miller*, 135 Cal. 69 [67 Pac. 12], in which case it is held that before "any confession of a defendant can be offered in evidence it must be shown by the prosecution that it was voluntary, and made without any previous inducement or by reason of any intimidation or threat. This is a preliminary question upon the admissibility of the testimony, addressed to the court, and to be determined by it, and not by the jury. Upon such preliminary inquiry the court should permit a cross-examination of the witness, for the purpose of showing the particular circumstances under which the confession was made, before permitting the confession itself to be given in evidence. A refusal to permit such cross-examination will not however, justify a reversal of the judgment, when it appears from the record that the defendant was not prejudiced thereby." In the present case the prosecution satisfactorily established that the various statements and the written confession of the appellant had been voluntarily made, and without any previous inducement or by reason of intimidation or threat. In the absence of a showing of prejudice the mere inversion of the order of proof does not call for a reversal.

■ Appellant next complains of the introduction of certain testimony which it is asserted tended to prove the commission or attempted commission of separate and distinct crimes having no connection with or bearing on the charges then pending against him. Mr. and Mrs. Jacob Dahl, the parents of four minor boys, were called by the prosecution and testified that appellant had negotiated with them to move on to his chicken ranch where they were to work for him; that their boys, in whom appellant showed some interest, were to accompany them; and that appellant subsequently told them that for various reasons it would be impossible for him to give them the promised employment. Stephen Black, a minor boy called by the People, testified that appellant had taken him to the ranch on divers occasions and on one of these visits had attempted to abuse him.

The witness Junior Thompson, also a small boy, testified that appellant had made indecent advances to him. The father of the latter boy testified that immediately following this occurrence he had pursued the appellant, but failed to catch him. As explained by the attorney-general, it was the theory of the prosecution that appellant is a moral pervert and degenerate, addicted to the practice of sodomy; he brought a number of boys to his ranch with the express purpose of committing these unnatural practices upon them, and, in order to conceal his crimes, he killed some of the boys upon whom the offenses had been committed. It was for the purpose of establishing this general scheme or plan that the prosecution introduced the testimony above set forth. The testimony of the witnesses last mentioned was, therefore, properly admitted in evidence for the purpose of showing the motive of the defendant in committing the offenses charged, and establishing a well planned scheme of appellant for abducting young boys in order that he might satisfy his abnormal desires, and then later kill them in order to cover up his crime. (*People* v. *Arnold,* 199 Cal. 471, 486 [250 Pac. 168]; *People* v. *Nakis,* 184 Cal. 105, 114 [193 Pac. 92]; *People* v. *Martin,* 50 Cal. App. 71, 73 [194 Pac. 522].)

Appellant offered no instructions. He now urges, however, that the court, of its own motion, should have instructed the jury to view with great caution and distrust the "evidence and testimony of an admitted accomplice, namely, Sanford Clark." Under the more recent authorities it would have been error to have so charged the jury. Such an instruction constitutes a charge upon a matter of fact in violation of section 19 of article VI of the Constitution. (*People* v. *Wardrip,* 141 Cal. 229, 233 [74 Pac. 744]; see, also, *Hirshfeld* v. *Dana,* 193 Cal. 142 [223 Pac. 451].) Appellant concedes that the decisions are against his contention, but seeks to have an exception declared in his case. But appellant did not offer any proposed instructions on the subject, and is, therefore, not in a position to now urge this particular contention. (*People* v. *King,* 65 Cal. App. 306, 310 [223 Pac. 1001].)

It was not error for the court to refuse to instruct upon the "lesser and included offenses of second degree murder and manslaughter." Appellant directs this par-

ticular attack to the "headless Mexican" charge, contending that as to this charge there was no showing of motive and the court should therefore have instructed upon the lesser and included offenses. With this argument we cannot agree. The evidence and the circumstances indicate that the victim designated in count one of the indictment had been wilfully and brutally murdered and decapitated, apparently because "he knew too much." No circumstances of mitigation, justification or excuse were shown, and it was not error for the court to fail to instruct upon the lesser and included offenses. (*People* v. *Watts*, 198 Cal. 776, 794, 795 [247 Pac. 884].) Furthermore, appellant is precluded from now urging the point because of his failure to submit or request any such instructions.

▮ Appellant's motion to be permitted to change his plea from "not guilty" to the plea of "not guilty by reason of insanity" was based upon several purported affidavits, the substance of which was that two doctors had examined appellant, and reached the conclusion that he was insane when examined by them, and that certain attorneys were present when the doctors made such examination, and heard them say the appellant was insane. Section 1016 of the Penal Code provides that a defendant who does not plead not guilty by reason of insanity shall be conclusively presumed to have been sane at the time of the commission of the offense charged, "provided that the court may for good cause shown allow a change of plea any time before the commencement of the trial." We concur in the view of the prosecution that "good cause" was not shown in the affidavits presented, and that the trial court did not abuse its discretion in refusing to grant appellant's motion.

When the appellant was arraigned he was represented and apparently well advised by counsel. He was fully informed as to, and aware of, his rights. From the affidavit of his own counsel it appears that he stubbornly resisted any advice and effort to have him enter the additional plea, "not guilty by reason of insanity." His sole plea, "not guilty," was not ignorantly induced, nor was it made through motives of hope or fear unduly operating upon his volition. In such a situation it was not an abuse of discretion for the trial court to refuse to permit the interposition of the additional plea. (*People* v. *Bostic,* 167 Cal. 754 [141

Pac. 380] ; *People* v. *Murphy,* 62 Cal. App. 709, 711 [217 Pac. 810].)

In addition to the motion for change of plea, appellant's counsel made a motion, based upon his own affidavit, to have the question of appellant's sanity at the time of the trial submitted to a jury as provided by the sections of the Penal Code. The record is not entirely clear upon the point, but we infer that the court considered all the affidavits offered at the time bearing on the question of appellant's sanity. It found the affidavits insufficient to create a doubt of appellant's sanity, and denied the motion. Subsequently, and on motion of the appellant, the court appointed certain alienists as a commission of experts to examine the appellant as to his sanity and to report to the court, in the event any doubt should arise as to his sanity during the course of the trial. These alienists subsequently filed with the court an affidavit in which they averred that, based upon their observation of the appellant, they were convinced he was sane. Appellant complains of the filing of this affidavit, contending that he should have been confronted with the affiants and afforded an opportunity to cross-examine them. The affidavit, while filed with the court, was never read to the jury nor made known to it in any way. It is therefore difficult to understand what prejudice, if any, could have resulted to the appellant's cause.

Appellant contends that the trial court erred in refusing to pass upon the competency of alleged confessions made by him before admitting the evidence. Some evidence of statements, not amounting to a confession, were admitted in evidence without any preliminary examination, but, before the purported confession in writing of the appellant was admitted in evidence it was shown to have been freely and voluntarily made and not induced by fear, threats or offers of leniency, reward or immunity.

We have examined the other points stated but not argued by the appellant in his brief, and have found nothing therein warranting a reversal.

The judgment and order are, and each is, affirmed.

Richards, J., Shenk, J., Seawell, J., Preston, J., and Curtis J., concurred.