[Crim. No. 3437.   First Dist., Div. One.   May 19, 1958.]

THE PEOPLE, Respondent, v. HIRAM MIMS, Appellant.

Wallace G. Colthurst, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Peter T. Kennedy, Deputy Attorney General, for Respondent.

PETERS, P. J.—Hiram Mims was charged with having feloniously taken a wallet from Helen Henry on March 11, 1957, and with two prior convictions. He pleaded not guilty to the grand theft charge and denied the priors. He was found guilty of grand theft, and the jury also found that he had suffered the priors. Judgment was entered accordingly. He appeals from the judgment and from the order denying his motion for a new trial.

Defendant does not directly attack the sufficiency of the evidence which is ample to sustain the finding of guilt. Mrs. Henry testified that on March 11, 1957, at between 3 and 3:30 p. m. when she boarded a McAllister Street bus, at Fillmore Street, and as she was going to her seat, she was bumped by the defendant. As she started to fall backwards

she noticed that her purse was open and she saw defendant's hand come out of her purse with her wallet which contained $33 and some personal papers. Defendant tried to get off the bus but Mrs. Henry grabbed his coat and accused him of stealing her wallet. The defendant hit and kicked her and denied the accusation. Also on the bus was Richard Evans, a reserve police officer of the San Francisco Police Department, who approached Mrs. Henry and defendant and identified himself as a police officer. He requested the bus driver to stop the bus and he and Mrs. Henry and defendant got off. Mr. Evans began to question the defendant. Both he and Mrs. Henry saw the wallet in defendant's pocket. Mrs. Henry retrieved her wallet and, as she did so, defendant struck her and escaped. Later he was arrested for vagrancy.

The next day, that is, on March 12, 1957, at the Hall of Justice, Mrs. Henry identified the defendant from his picture. She was then taken to Judge Underwood's court, where defendant was appearing on the vagrancy charge, and she identified defendant out of a group of over 20 people. Mr. Evans tentatively identified defendant from his picture, but was not sure until he saw defendant in Judge Underwood's court, where he made a positive identification. Both positively identified defendant at the time of trial.

A store detective from Hale Bros. testified that she had known defendant for over five years; that on numerous occasions she had seen him mingle with crowds of people; that on February 25, 1957, in Woolworth's, she observed him put a hand into a lady's purse and take her wallet; that on the same day she saw him reach into the pocketbook of a lady who was boarding a bus at Fifth and Market; that on March 4, 1957, she saw him reach into a lady's purse on a Powell cable car. On all of these occasions he was wearing a natural beige trenchcoat, the same kind of coat that Mrs. Henry and Mr. Evans testified he was wearing on March 11, 1957.

A San Francisco police officer testified that on March 4, 1957, he saw defendant fumble with the clasp of a woman's purse as he was boarding a bus. He failed to get the purse open.

A store detective for J. C. Penney Company testified that on March 11, 1957, at about 6 p. m. in Macy's she observed defendant lay his hand on the back of a man near that man's pocket. This person also testified to several other occurrences that she observed, all involving attempts by defendant to open women's purses, usually on buses.

When defendant, after his arrest, was informed that Mrs. Henry and Mr. Evans had identified him, he admitted his guilt but denied that Mrs. Henry had taken the wallet out of his pocket, stating "I gave it back to her."

Defendant at the trial denied all the charges. In addition, he testified that on March 11, 1957, he was home until 3 or 3:30 p. m. when he took a suit to a pawn shop on O'Farrell and Fillmore to pawn it. He arrived there about 3:20 p. m. and, after a short delay, pawned the suit. He then went to his doctor at Sutter and Fillmore, but the doctor was not in. He remained in the general area until 4:30 p. m. and saw the doctor. The pawn shop and the doctor's office are only a few blocks from where Mrs. Henry boarded the bus on which she testified defendant was riding.

Defendant denied being on the Number 5 bus on the day in question, and claimed he first saw Mrs. Henry in Judge Underwood's courtroom. He denied making the admissions of guilt to the police, denied that he had taken or attempted to take wallets on the occasions testified to by the other witnesses, but admitted he owned a trenchcoat of the type described by the witnesses.

The records of the pawnshop show that defendant had pawned a suit there at 3:30 p. m. on March 11, 1957. It was stipulated that if the doctor were called as a witness he would testify that defendant called at the office about 3:40 p. m. and was seen by the doctor as a patient between 4 and 4:30 p. m. on that day.

The first contention of appellant is that he was deprived of his constitutional right to act in his own defense. This contention is based on the following facts as shown by the record: As the trial progressed, appellant became dissatisfied with the way his counsel, an assistant public defender, was handling some portions of the case. While the officer who had testified as to the identification of appellant by Mrs. Henry and Mr. Evans was on recross-examination, defense counsel informed the court that the appellant had requested him to ask the witness a certain question, and that the appellant wanted permission to ask the question himself. The following then occurred:

"The Court: You have an unusual case. You represent the Defendant. The situation is the same as in any other case. The attorney could ask the questions. Ordinarily, an attorney is judge of what questions should be asked after consultation. Go ahead, ask the question.

"The Defendant: I should be able to ask a question.

"The Court: Keep quiet, please, Mr. Mims. You have an attorney to speak for you.

"The Defendant: Well, is it against the law for me to speak?

"The Court: Did you hear what the Court said, Mr. Mims? Mr. McNamara, proceed with the question."

Defense counsel then asked the question that appellant desired asked, and it was answered. Then at the close of the examination of this witness defense counsel asked for a conference with the judge in chambers. At this conference the defendant and his counsel were present. Defense counsel told the court that his client had expressed dissatisfaction with the way he was handling the case, and that the client had expressed a desire to subpoena Judge Underwood, the assistant district attorney of that court and the reporter of that court, and also wanted all of the testimony of the police officer who testified in that vagrancy case to be read by the reporter. Defense counsel then stated that in his opinion this would not be proper and that such evidence was not admissible. The court concurred in the advice that defense counsel had given his client, and told appellant that his attorney "has handled this case very ably and very well, under the most difficult circumstances," and that appellant ought to be grateful to his counsel. When appellant expressed the desire to call the witnesses the court told him that "those witnesses are not material," and that what happened at the vagrancy trial was immaterial. When appellant attempted to protest, the court stated:

"Just a minute, Mr. Mims. Will you keep quiet. . . . what happened in Judge Underwood's court is not material to that question.

"The Defendant: But, it is, Your Honor.

"The Court: Well, I am sorry, you are not the judge. We will proceed with the case, Mr. McNamara. The Court thanks you for your services, too. . . . And you keep quiet there. If you have anything to say, your attorney will say it for you, Mr. Mims."

On this appeal appellant does not argue directly that the evidence of what occurred in Judge Underwood's court was material or relevant, or that the trial court's rulings thereon were erroneous. His contention is that when the court told him to keep quiet and to speak only through his counsel, he was misled and prevented from exercising his right to dismiss

his counsel and defend in person. It is argued that once the conflict appeared between appellant and his counsel the court was under a duty to instruct him that he had the legal right to discharge his counsel. It is contended that failing to do so the court committed prejudicial error.

The point is without merit. ▮ It is true that article I, section 13, of the Constitution confers upon an accused the right "to appear and defend, in person *and* with counsel." Under this section it is the law that if the accused "does have the aid of counsel, he is not required to leave his defense entirely in the hands of his counsel, for the constitution guarantees him the right to appear and defend in person 'and' with counsel. It does not say 'or' with counsel." (14 Cal.Jur.2d p. 384, § 149.) This means that a defendant has the right to confer with his counsel, and if he is deprived of that right prejudicial error has occurred. (*People* v. *Zammora,* 66 Cal. App.2d 166 [152 P.2d 180].) ▮ But the fact that he may defend "in person and with counsel" does not mean that a defendant may proceed with counsel and also elect to ask questions and otherwise handle his own trial. He may have an attorney and act as his own attorney, but one or the other must be in charge of the defense. Thus, an order of the court to compel the defendant to elect to proceed either in person or by counsel is not erroneous. (*People* v. *Northcott,* 209 Cal. 639 [289 P. 634, 70 A.L.R. 806]; *People* v. *Glenn,* 96 Cal.App.2d 859 [216 P.2d 457]; see generally 70 A.L.R. 817.)

▮ The trial judge has power over the conduct of the trial. Whether a defendant who has counsel shall be permitted to examine witnesses must be left largely to the discretion of the trial court.

▮ In the present caes the court, in effect, told appellant that as long as he had counsel he should proceed through such counsel. While it would have been appropriate for the court to have told appellant he could discharge his counsel if he desired and proceed to question the witness personally, no prejudice appears from the failure to do so. (*People* v. *Marcus,* 133 Cal.App.2d 579 [284 P.2d 848].) It clearly appears from the record that appellant was afforded the right of consultation with his attorney. It also appears that appellant wanted a specific question asked of a prosecution witness. The court directed counsel to ask the question, and he did. No authority is or can be cited in support of the contention that it was prejudicial error to have failed to

have informed appellant of his right to discharge his lawyer. There is no evidence that defendant wanted to discharge his attorney, and certainly there was no request that he be permitted to do so. In the absence of some such evidence the court was under no duty to act, and the failure to do so was not error.

The next contention of appellant is that the court in imposing sentence measured the sentence not only by the grand theft conviction, but also imposed a penalty for perjury, an offense not charged or proved.

Just before imposing sentence the trial court stated:

"And I want to advise you, Mr. Mims, that in passing sentence upon you, the Court is going to take into consideration the fact, in the Court's opinion, you committed wilful and deliberate perjury on the stand. And, as I told Defendants earlier this week, where they do that, the Court is going to take that into consideration in passing judgment on them. The courts never object, at all, to the Defendant who will stand silent if he is accused of a crime, or gets up and tells his story in an effort to extricate himself, but when they get up and commit wilful and deliberate perjury——

"The Defendant: Your Honor—but——

"The Court: ——and the jury so found that you did commit wilful and deliberate perjury, and that will be taken into consideration when sentence is passed upon you.

"And I don't want to hear anything from you, at all. That is all. Take him, Mr. Bailiff."

Subsequently, the court sentenced appellant "to the State Prison for the term to start at the conclusion of the sentence you are presently serving in the County Jail."

At the time of sentence appellant was serving a 6-month sentence for vagrancy, a charge to which he had pleaded guilty in Judge Underwood's court. It is the contention of appellant that the trial court imposed the maximum sentence in order to punish him not only for grand theft, but because of a belief that he was guilty of perjury, an offense neither charged nor proved. The passage above quoted is relied upon in support of this argument.

The point is without merit. In view of the fact that appellant had two priors, the trial court was without power to grant probation. (Pen. Code, § 1203.) By virtue of section 489 of the Penal Code the trial court could either have imposed a county jail sentence or a state prison sentence for not to exceed 10 years. Certainly it cannot be held that by

electing to send appellant to the state prison the trial court abused its powers. The evidence of guilt was strong and the appellant had two prior felony convictions. A state prison term was called for. Once having determined upon a state prison sentence the trial court had no voice in fixing the term. The maximum is fixed by section 489 of the Penal Code at 10 years, and by section 1168 of the Penal Code the trial judge "shall not fix the term or duration of the period of imprisonment." The precise sentence is fixed by the Adult Authority under the terms of section 3020 of the Penal Code. The trial judge had the discretion to make the sentence start to run at the termination of the county jail sentence. Thus, everything the trial judge did was within his discretion. In determining how he would exercise this discretion the trial judge was entitled to consider the facts of the case, including how appellant had behaved on the witness stand. If he believed that the defendant had committed wilful perjury, and that view is supported by the record, this is a factor that he could consider when he came to exercising his discretion.

Under these circumstances there was no abuse of discretion in imposing the sentence here involved.

Appellant contends that reversible error was committed by admitting into evidence the testimony of the three witnesses who described observing appellant commit, or attempt to commit, other crimes. These three testified as to various occasions when they had seen appellant mingle in crowded places, put his hand into ladies' purses and remove, or attempt to remove, their wallets. It is appellant's claim that such evidence was inadmissible.

It is now well settled as an exception to the rule that evidence of other crimes is not admissible, that evidence of similar crimes is admissible to show plan, scheme, system, design or a characteristic behavior pattern of the accused. (*People* v. *Cavanaugh*, 44 Cal.2d 252 [282 P.2d 53]; *People* v. *Coefield*, 37 Cal.2d 865 [236 P.2d 570].) If the evidence does not relate to any of these features and has no relation to the charged offense, the evidence is not admissible. (*People* v. *McCullough*, 158 Cal.App.2d 310 [322 P.2d 289]; *People* v. *Channell*, 136 Cal.App.2d 99 [288 P.2d 326].)

In the instant case the evidence did tend to show a common scheme, plan or system and a characteristic behavior pattern of the defendant. The testimony indicated that he would seek out crowded places, frequently a bus, and would open women's purses and remove their wallets. His method

of operation in these cases testified to was similar to the method of operation used by the thief who removed Mrs. Henry's wallet. All of the transactions testified to occurred in crowded areas in San Francisco and within a period close to the date of the charged offense.

Even if it were error to have admitted this testimony, such error would not have been prejudicial. All of the testimony of these other offenses came into the record without objection. All of the witnesses who testified to these other offenses were thoroughly cross-examined by appellant's counsel. This being so, the evidence is not now subject to attack. (*People* v. *Haines*, 64 Cal.App. 628 [222 P. 183].)

The last contention of appellant is that the prosecuting attorney was guilty of prejudicial misconduct. In cross-examining appellant the prosecutor stated to the witness that several times during his testimony the witness had referred to his "illness" and then asked: "Your illness is narcotic addiction, isn't it?" When appellant answered: "No, it is not," the prosecutor asked: "You are not an addict?" and appellant replied that he had never been convicted of narcotic addiction. Then, after appellant had testified that he was innocent of the vagrancy charge but had pleaded guilty to it because he was ill, the prosecutor asked: "You were suffering from withdrawal symptoms, weren't you?" He replied: "I don't know what withdrawal symptoms is. I'm not a doctor. All I know was that I was ill at the time."

No objection to any of these questions was made at the trial. It is too late to raise the point for the first time on appeal. Failure to object amounts to a waiver of any objection he may have had. (*People* v. *Johnson*, 153 Cal.App.2d 564 [314 P.2d 751]; *People* v. *Parrella*, 158 Cal.App.2d 140 [322 P.2d 83].)

Appellant also objects to the fact that on several occasions during argument the prosecutor referred to matters which disclosed that there may have been a difference of opinion between appellant and his counsel. No objection was made to these remarks during the trial. As already pointed out, failure to object amounts to a waiver.

The judgment and order appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 16, 1958.