Ronnie Ken STINER and Larry Griffet,
Appellants,

v.

The STATE of Oklahoma, Appellee.

No. F–75–300.

Court of Criminal Appeals of Oklahoma.

Aug. 13, 1975.

Benjamin J. Curtis, Poteau, for appellants.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Jim Patton, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

The appellants, Ronnie Ken Stiner and Larry Griffet, hereinafter referred to as defendants, were charged, tried and convicted in the District Court, LeFlore County, Case No. CRF–74–110, for the offense of Escape from Penitentiary, in violation of 21 O.S.1971, § 443. The jury fixed the punishment of each defendant at four (4) years' imprisonment, and from each judgment and sentence a timely appeal has been perfected to this Court.

At the trial, the first witness for the State was Jesse Tittsworth, Assistant Records Clerk at the Oklahoma State Penitentiary. He stated that his job consisted of keeping the records of those incarcerated at the Oklahoma State Penitentiary, and explained that the Ouachita Vocational Technical Camp was a satellite facility of the Oklahoma Department of Corrections located in LeFlore County. From the records then in his possession, he identified State's Exhibits Nos. 1 and 2 as appropriately certified copies of judgments and sentences under which each defendant was confined on August 7, 1974. Exhibit No. 1 revealed that defendant Stiner was under a two year sentence for Embezzlement by Bailee from Tulsa County, and Exhibit No. 2 established that defendant Griffet had received a two year sentence for Second Degree Burglary from Delaware County. He further identified each defendant from identification pictures contained within those records. He testified that neither defendant had been pardoned nor paroled on the above date.

The second witness to testify was Kenneth Ramsay, an employee at the Ouachita Vocational Technical Training Camp located in Hodgens. He identified each defendant as former inmates at that facility, and testified that at about 11:00 a. m. on the above date, they borrowed a state-owned 1965 or 1966 Dodge pickup for the sole purpose of performing some maintenance work for which they had volunteered, and were to return the pickup within thirty minutes. The work was to have been performed upon the compound since an officer was required to accompany inmates working off the compound When the defendants failed to return, he attempted to locate them but was unsuccessful and notified Lt. Cranfield. A head count was then conducted and at about 1:30 p. m. the defendants were discovered missing.

Chester John Cranfield, Sr., Lieutenant of the guards at the correctional facility located in Hodgens, then testified and confirmed the testimony of the above witness regarding the head count and discovery that the defendants were missing. The witness then explained that under the rules and regulations of the facility no inmate is allowed outside the compound unless escorted by an officer. He acknowledged that the defendants had been assigned to the maintenance crew, and further testified that he had never directed an inmate to work outside the compound without being accompanied by an officer.

Warren C. Nuzum, a police officer with the El Reno Police Department, then testified that he and other officers proceeded to a certain residence in El Reno in the afternoon of August 11, 1974, upon information that two escaped convicts were at that location. After other officers approached the front door of the residence, the two defendants proceeded rather rapidly out the back door, but from the back porch then dropped face-down into a prone position when advised of the officers' presence.

The final witness in chief for the State was Hugh Gardenhire, Chief of Security at the Ouachita Vocational Technical Training Center, who testified that when an inmate leaves that compound the officer in charge will always accompany him, especially when an automobile is used. Further, the officer would first proceed to the office, where he would leave such information as the inmate's number, the location to which they were proceeding, their purpose, and the approximate time of return. He also testified that to his knowledge these defendants did not have permission to leave the compound on August 7, 1974, and although he admitted that one of his subordinates could have given such permission, he further asserted that they had no authority to do so.

David Eugene Evans was then called as the first defense witness and testified that he was presently incarcerated at the State Penitentiary at McAlester, and became acquainted with the defendants while incarcerated there. Before defendant Stiner was transferred to Hodgens, he observed

some altercation between that defendant and four or five black inmates in the shower, and defendant Stiner subsequently stated that they had tried to sexually molest him. In cross-examination he admitted six prior felony convictions, and that he was not personally familiar with circumstances existing at the facility in Hodgens.

The second defense witness was Dale Thomas Taylor, who testified that he was presently incarcerated at McAlester, but had previously become acquainted with the defendants when incarcerated at Hodgens. He also testified that defendant Stiner had been threatened with sexual assault by black males at the Hodgens facility, and fearing for their lives both defendants had sought his advice as to what to do. In cross-examination he admitted two prior felony convictions.

Defendant Griffet then took the stand as the final defense witness, and testified that while incarcerated at the Hodgens facility five black males, one of whom had a knife, attempted to sexually assault his co-defendant at the water plant, and when he endeavored to assist defendant Stiner they threatened both of their lives. He further testified that the guards were not notified of the situation since to do so would be futile and cause futher reprisal from other inmates. As an alternative the defendants decided to go to El Reno where defendant Stiner had an uncle who worked at the Federal Penitentiary. Their intention was to turn themselves in there in the hope of being imprisoned elsewhere. In cross-examination he testified that they had hitchhiked from Hodgens to El Reno and did not leave in the missing pickup that was later found in Tulsa, and he did not know how defendant Stiner came into possession of the billfold of a Mr. Morris from Sapulpa.

In rebuttal, the State recalled Hugh Gerdenhire, who testified that if an inmate so desired he could at any time walk away from the Hodgens facility, and that he had received no reports of sexual molestation among the inmates there.

In surrebuttal the defense recalled Dale Thomas Taylor, who then testified that defendant Stiner had asked Mr. Gardenhire that he be separated from black inmates in his cell so that he would not be sexually assaulted.

█ In the first of the four assignments of error, the defendants contend that the trial court erred in overruling their Motion for Severance, which was timely filed and presented. As set forth in *Curcie v. State*, Okl.Cr., 496 P.2d 387, 388 (1972), we have repeatedly held:

"... It is the general rule that the granting of a severance is discretionary with the trial court, and that the Court of Criminal Appeals will not disturb the trial court's ruling, absent a showing that prejudice resulted therein. *Ferguson and Alley v. State*, Okl.Cr., 489 P.2d 523. ..."

The defendants recognize this rule, but, without otherwise suggesting how they were prejudiced, the defendants assert that the defense of one was necessarily antagonistic and inconsistent with the defense of the other since only defendant Griffet chose to testify. At the hearing upon the Motion for New Trial, defendant Stiner testified that he considered the witnesses Evans and Taylor to be his defense witnesses. Clearly, the purported defense thus offered by each defendant was then that they departed custody involuntarily under duress, due to threats upon their lives from other inmates resulting when defendant Stiner resisted sexual molestation and defendant Griffet endeavored to assist his co-defendant. The testimony of Evans and Taylor therefore bolstered the testimony of defendant Griffet, and the testimony of the latter advanced the defense of defendant Stiner without subjecting him to cross-examination. Rather than being antagonistic and inconsistent to one another, the defense adopted by each defendant was perfectly compatible, and in fact advanced the

defense employed by the other. This proposition is patently frivolous and without merit.

▌ The second assignment of error is applicable to defendant Stiner only, who here urges that the trial court erred in rejecting his oral motion made just before trial to act as co-counsel to his appointed attorney. This defendant did not attempt to waive representation by his appointed attorney, and does not now establish how he was prejudiced. The only case cited in support of this proposition is not in point. This Court recently again addressed this proposition in *Smith v. State*, Okl.Cr., 521 P.2d 832, 836 (1974), wherein we stated:

"The defendant next contends that the trial court committed error in refusing to allow the defendant to act as his own co-counsel. This issue was raised in *Fowler v. State*, Okl.Cr., 512 P.2d 238, wherein this Court, citing *People v. Mims*, 160 Cal.App.2d 589, 325 P.2d 234 (1958), held that an order of the trial court to compel the defendant to elect to proceed either in person or by counsel is not erroneous. The Court further held that where the defendant is represented by counsel, one or the other must be in charge of the defense in order to preserve orderly procedure."

We recognize that in *Faretta v. State of California*, —— U.S. ——, 95 S.Ct. 2525, 45 L.Ed.2d 562 (June 30, 1975), also reported in 43 U.S.L.Week 5004, the United States Supreme Court quite recently held the Sixth Amendment to the United States Constitution as made applicable to the States by the Fourteenth guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily and intelligently elects to do so. However, the right of self-representation has by statute been granted in Federal proceedings since 1789. See, Section 35 of the Judiciary Act of 1789, 1 Stat. 73, 92, enacted by the first Congress and now codified in 28 U.S.C. § 1654. The Federal Courts have consistently recognized that there is no constitutional right to hybrid representation partially pro se and partially by counsel. See, *United States v. Dellinger*, 472 F.2d 340, 408 (7th Cir., 1972), cert. den., 410 U.S. 970, 93 S. Ct. 1443, 35 L.Ed.2d 706; *Lee v. State of Alabama*, 406 F.2d 466, 469 (5th Cir., 1969); *Duke v. United States*, 255 F.2d 721, 725 (9th Cir., 1958), cert. den., 357 U.S. 920, 78 S.Ct. 1361, 2 L.Ed.2d 1365; *Egan v. Teets*, 251 F.2d 571, 578 (9th Cir., 1957) and *Shelton v. United States*, 205 F.2d 806, 812 (5th Cir., 1953). Also see Annotation 17 A.L.R. 266, 271, supplemented at 77 A.L.R.2d 1233, 1241. In the absence of a showing of prejudice, we are therefore of the opinion that the ruling of the trial court upon defendant's motion to act as co-counsel did not constitute an abuse of discretion, and hold this proposition to be without merit.

▌ In passing we are constrained to observe that in the application of *Faretta*, supra, the trial courts of this State should proceed with caution. Since the right to proceed without an attorney or by counsel necessarily involves conflicting interests, the trial court should clearly ascertain that a defendant knowingly, voluntarily and intelligently elects to proceed pro se, and in an appropriate case attention should be given to the following passage from that decision:

". . . [A] State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary. . . ." (Footnote 45)

▌▌ Considering the third and fourth assignments of error together, the defendants complain of alleged improper gestures and conduct by a State witness and the prosecutor during direct examination of defense witnesses, improper closing argument in behalf of the State, and the sufficiency of the evidence to support the verdict. However, no authority is cited in

support of these assignments, and no objections were interposed to the comments now asserted to be improper. With regard to the sufficiency of the evidence, we observe that the facts and circumstances of this case did not establish the legal defense of involuntary escape. See *Chester v. State*, Okl.Cr., 485 P.2d 1065 (1971) and *Grubb v. State*, Okl.Cr., 533 P.2d 988 (1975). Further, in *Laurie v. State*, Okl. Cr., 529 P.2d 1009, 1010 (1974), wherein the defendant was convicted for the same offense, this Court held:

"... We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, this Court will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. In the instant case the defendant testified that he left because of a threat to his life. It then becomes a question of fact for jury determination. ..."

The record does not reveal that any improper conduct or comment in behalf of the State was of fundamental stature, and as stated in *Neal v. State*, Okl.Cr., 506 P. 2d 936, 941 (1973):

"... It is a well established rule that when an objectionable statement is made by the prosecution, it should be called to the attention of the court by timely objection, together with a request that the jury be instructed to disregard the improper statement and in the event that the objection is overruled, an exception should be taken to the ruling of the court, preserved and argued in the Motion for New Trial. When this is not done, the defendant is deemed to have waived any objection unless the remarks are so fundamentally prejudicial that the court cannot, by instructions to the jury, correct such error. ..."

Finally, in *Sandefur v. State*, Okl.Cr., 461 P.2d 954, 956 (1969), this Court again held:

"'It is necessary for counsel for plaintiff in error not only to assert error, but to support his contentions by both argument and the citations of authorities. Where this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this court will not search the books for authorities to support the mere assertion that the trial court has erred.' See: *Collins v. State*, Okl.Cr., 407 P.2d 609."

In conclusion, we observe that the record is free of any error which would justify modification or reversal. The judgment and sentence is, accordingly,

*Affirmed.*

BRETT, P. J., and BLISS, J., concur.