Filed 12/29/25  P. v. Villalobos CA6

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GUSTAVO ESPINOZA VILLALOBOS,<br><br>    Defendant and Appellant. | H053058<br>(Monterey County<br>Super. Ct. No. 20CR003412) |

After a trial, Gustavo Espinoza Villalobos was convicted of three counts of lewd acts on a child and one count of child molestation, and the trial court sentenced him to 25 years to life in prison.  Villalobos now appeals based on a single argument: that the trial court granted a motion in limine to admit expert testimony concerning child sexual abuse accommodation syndrome (CSAAS) without requiring the prosecutor to lay a proper foundation.  As explained below, we reject this argument because at trial the prosecution's expert indisputably laid an adequate foundation for his CSAAS opinions. The judgment is therefore affirmed.

## I. BACKGROUND

Villalobos was charged with seven counts of committing a lewd act upon a child in violation of Penal Code section 288, subdivision (a) (counts 1-7) and one count of misdemeanor child molestation in violation of Penal Code section 647.6, subdivision (a)(1) (count 8).  The first five counts concerned Villalobos' youngest

stepson.  The seventh and eighth counts concerned, respectively, Villalobos' two older stepsons.  The sixth count concerned a next-door neighbor.

Before trial, the People filed a motion in limine seeking, among other things, to admit expert testimony from Dr. Blake Carmichael, a clinical psychologist, concerning CSAAS.  The People argued that the defense was likely to attack the credibility of the victims based on common myths and misconceptions such as that children disclose molestation immediately and in full detail, and that Dr. Carmichael's testimony would help to dispel these misconceptions.  At the hearing on the motions in limine, Villalobos opposed on the ground that the myths identified by the prosecution were common knowledge and therefore not a proper subject of expert testimony.  In response, the prosecutor contended, albeit without presenting any evidence, that many people still do not understand the myths at issue.  Noting that it had just finished a jury trial involving similar charges and that "the common myths and misconceptions about victims of child molest[ation] were, again, quite apparent during voir dire selection," the trial court agreed with the prosecution and admitted Dr. Carmichael's testimony.

At trial, before Dr. Carmichael testified concerning common myths and misconceptions concerning victims of child sexual abuse, the prosecutor asked Dr. Carmichael whether there are some typical myths and misconceptions. Dr. Carmichael responded that there were and that "recent research . . . shows that."  In particular, Dr. Carmichael noted that "[r]esearch by Grangenett, Saint George, Delahunty," and others had "found that the lay public, [and] general public, still holds a lot of myths and misconceptions about kids who have been sexually abused."  Although Dr. Carmichael acknowledged that there was a lot of public media concerning sexual abuse in the last 10 to 15 years and child sexual basis was more in the public eye, he nonetheless testified that, "based on the last 20 years and even more recently, we see that there are still myths and misconceptions and need for education about this topic."

At trial, all four of the alleged victims testified, and another witness testified that Villalobos molested him when he was over 18 years old. The defense did not present any witnesses. The day after beginning deliberations, the jury returned its verdict. In December 2024 a jury found Villalobos guilty on counts 1, 6, 7, and 8. However, the jury acquitted Villalobos on four of the lewd act counts involving his youngest stepson.

The trial court sentenced Villalobos to 25 years to life on count 1, the lewd count concerning his youngest son. On the other two lewd act counts, the court also sentenced Villalobos to 25 years to life, both to be served concurrently with the sentence on count 1. On the final count of misdemeanor child molestation, the court imposed a term of 364 days, also to be served concurrently.

Villalobos filed a timely notice of appeal.

## II. DISCUSSION

Villalobos contends that the trial court abused its discretion by not requiring the People to present evidence at the in limine hearing establishing the foundation—that myths and misconceptions concerning child sexual abuse victims are still widely held and beyond the common experience of a typical person—for Dr. Carmichael's CSAAS's testimony. The Attorney General offers three responses: (1) the Supreme Court's decision in *People v. McAlpin* (1991) 53 Cal.3d 1289 and recent Court of Appeal decisions in *People v. Munch* (2020) 52 Cal.App.5th 464 (*Munch*) and *People v. Lapenias* (2021) 67 Cal.App.5th 162 have recognized the existence of these myths and misconceptions; (2) the trial court recognized the existence of these myths and misconceptions based on its recent experience in voir dire; and (3) at trial Dr. Carmichael testified that recent research showed that the general public still holds myths and misconceptions. We need address only the last argument.

When the relevance of evidence is dependent on a preliminary fact, the Evidence Code places on the evidence's proponent "the burden of producing evidence as to the existence of the preliminary fact." (Evid. Code, § 403, subd. (a).) Expert opinion

3

testimony is dependent on such a preliminary fact: The opinion must relate "to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (*Id.*, § 801, subd. (a)(1).) However, whether a subject is beyond common experience is "a question of degree" because "a jury need not be wholly ignorant of the subject matter," and therefore an expert opinion need not be excluded on this ground unless "the opinion would add nothing at all to the jury's common fund of information." (*People v. Dejourney* (2011) 192 Cal.App.4th 1091, 1110.) Consequently, trial courts exercise "broad discretion" in determining whether the foundational requirements for an expert witness have been satisfied. (*People v. Cornwell* (2005) 37 Cal.4th 50, 81, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *People v. Ramos* (1997) 15 Cal.4th 1133, 1175.)

Even when expert testimony is improperly admitted, " '[t]he erroneous admission of expert testimony only warrants reversal if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." ' " (*People v. Pearson* (2013) 56 Cal.4th 393, 446; see also *Munch*, *supra*, 52 Cal.App.5th at p. 475 [applying the reasonable probability standard to the admission of CSAAS testimony].) Accordingly, the Supreme Court has long recognized that, when evidence is admitted without establishment of a preliminary fact, the defect may be cured by later evidence establishing that fact: "[T]he mere inversion of the order of proof does not call for reversal." *(People v. Northcott* (1930) 209 Cal. 639, 652; see also *People v. Grill* (1907) 151 Cal. 592, 599 [holding that admission of deposition transcript before proof the witness was unavailable was "merely a matter of the order of proof which is always within the discretion of court, within reasonable limits"], overruled on other grounds in *People v. Henderson* (1963) 60 Cal.2d 482, 496; *People v. Mayes* (1863) 113 Cal. 618, 627 [upholding admission of out-of-court statements admitted before evidence that they were in the defendant's presence; "[t]hat they were admitted out of the proper order of developing the case does not constitute error"].)

4

Here, even if the prosecutor failed to establish in the motion in limine that the general public continues to have myths and misconceptions about child sexual abuse victims, and therefore Dr. Carmichael's opinions concerning those myths and misconceptions would assist the jury in evaluating the testimony presented in this case, that defect was cured at trial. As noted above, before Dr. Carmichael offered any opinions concerning CSAAS, the prosecutor asked whether there are common myths and misconceptions about child sexual abuse victims. Dr. Carmichael responded that there are and "recent research . . . shows that." Research by a few people in the field, several of whom Dr. Carmichael named, "found that the lay public, [and] general public, still holds a lot of myths and misconceptions about kids who have been sexually abused." These myths concern whether "a kid [who has been sexually abused] can still appear very happy and enjoy spending time with their perpetrator" and "a kid may not show outward displays of distress about the abuse." In addition, there is generally little understanding "[w]hy kids do not tell right away" and "might . . . delay for months or even years" to disclose sexual abuse. "So," Dr. Carmichael concluded, "based on the last 20 years and even more recently, we see that there are still myths and misconceptions and need for education about this topic."

Villalobos does not dispute that this testimony concerning the continued existence of myths and misconceptions about child sexual abuse victims laid an adequate foundation for Dr. Carmichael's CSAAS opinions. Instead, Villalobos asserts that "[t]he fact that when testifying during the People's case-in-chief a witness says things that would have been sufficient to sustain the People's burden during the hearing on in limine motions cannot be used to justify that burden." However, Villalobos does not reconcile this contention with the Supreme Court's decisions recognizing that defects in the foundation of evidence may be later cured. Instead, Villalobos relies on another Supreme Court decision, *People v. Moore* (1988) 47 Cal.3d 63. But that decision did not consider the admission of evidence. Instead, it addressed a *Faretta* motion by the defendant to

5

represent himself (*id*. at pp. 79-80), and while the Supreme Court observed that a *Faretta* motion "would be based on the 'facts as they appear at the time of the hearing on the motion rather than on what subsequent develops' " (*id*. at p. 80), Villalobos fails to explain how that rationale extends to the situation here.

We therefore conclude that there was no reversible error in the admission of Dr. Carmichaels' opinions concerning CSAAS.

### III. DISPOSITION

The judgment is affirmed.

_____

BROMBERG, J.

WE CONCUR:

_____

GREENWOOD, P. J.

_____

DANNER, J.

*People v. Villalobos*
H053058