[Crim. No. 25171. Second Dist., Div. Five. May 14, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
DWIGHT RAYMOND MEALS, Defendant and Appellant.

COUNSEL

Dwight Raymond Meals, in pro. per., and Benson Schaffer for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Jack T. Kerry, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HASTINGS, J.**—Dwight Raymond Meals was charged with one count of robbery in violation of section 211 of the Penal Code. In an amendment to the information it was alleged that the defendant had suffered six prior felony convictions. Upon the People's motion the sixth prior was stricken. The defendant pleaded not guilty and denied the prior convictions.[1] A jury trial was waived and the court found defendant guilty as charged. Following the substitution of private counsel for the public defender, defendant's motion for a new trial was heard and

---

[1] The minutes of November 20, 1973, as shown in the clerk's transcript on appeal, erroneously recite that defendant admitted five prior convictions.

denied. The robbery was determined to be of the first degree. The court struck the first two priors, and no determination was made as to the remaining three alleged prior convictions. Probation was denied, and defendant Meals was sentenced to be punished by imprisonment in the state prison for the term prescribed by law, with no credit for time already served. He has appealed from the judgment; he also purports to appeal from the denial of his motion for a new trial.

At approximately 9:30 p.m. on July 24, 1973, Ebroul Bolanos left the high school at Fairfax and Melrose where he was studying English at night. He went to a Safeway store at Third and Vermont where he shopped for more than an hour, buying about $33 worth of groceries. He paid for the groceries with a $30 check and about $3 cash. He then went to a nearby gas station to buy gasoline. Afterwards, on his way home at approximately 11 p.m., while he was stopped at the intersection of Hobart and Lemon Streets, defendant Meals walked over to Bolanos' car and asked the location of Kingsley Drive. Bolanos rolled down his window and as he pointed towards Kingsley, defendant grabbed Bolanos' hand and put a six-inch knife blade to his throat while warning him "not to holler or make any noise," or else defendant would kill him.

Another man then appeared who, along with defendant, removed Bolanos from his automobile. Defendant asked Bolanos for his money and Bolanos said he did not have any. Defendant removed Bolanos' wallet containing $104 from his shirt pocket. The other man kicked Bolanos in the stomach and they fled on foot through a school before getting into a Cadillac automobile parked nearby. Bolanos followed their car, which had its lights off, for approximately three blocks before being able to write down its license number, UUD 968. Three people were in their car.

When Bolanos notified the police of the robbery, he gave them particulars about the extent of his loss, and a description of the two suspects and of the automobile, including its license number.

About three days after the robbery, a police officer showed Bolanos a series of photographs from an album. From these, Bolanos identified photographs of defendant and his accomplice as being those of the two men who robbed him.

When Bolanos and the police officers went back to the robbery scene, they found two cards, one a labor union card, belonging to Bolanos lying on the ground.

On July 26, 1973, while on plainclothes patrol, Officer Keenan and his partner saw defendant standing on the sidewalk besides a black over gray Cadillac, license number UUD 968. Based upon information Officer Keenan had received in a daily crime sheet describing a robbery of July 24, he recognized defendant and the automobile. The officer got out of his automobile, identified himself as a police officer and told defendant that he wanted to talk with him. Defendant ran away. Officer Keenan and his partner gave pursuit and finally caught and arrested defendant.

Testifying in his own behalf, defendant stated that on July 24, 1973, he was shopping with his girlfriend Deborah at the Safeway when "an associate" of his, Arnett Jackson, told him that his car was not running and asked defendant to take him to his house to pick up a television set he wanted to sell. Defendant agreed, leaving Deborah at the market. They put the television set in defendant's trunk and returned to Safeway. Jackson said that he would try to sell the television in the parking lot. Jackson approached Bolanos who after some discussion agreed to buy the set for $125. Bolanos, however, did not have that much cash with him and he asked Jackson to follow him to a friend's house where he could borrow the money. His friend could only loan $50 so Bolanos asked Jackson to follow him back to the Safeway where he could cash a check for the remaining $75. While Jackson and defendant were waiting for Bolanos, a friend of defendant, Clotilde de los Santos, came out of the market and chatted with Deborah. Bolanos returned to defendant's car and told Jackson that he could only cash a check for $30 but offered to go to another market to write another check. Jackson declined and said he'd take the $80. The $50 loan had been left at the friend's house so they all drove back there where Jackson gave the television to Bolanos. Bolanos gave Jackson $80 and they left.

Defendant further testified that at the time of his arrest, both officers jumped from their car, drew their guns and said: "Hold it, Meals," without ever identifying themselves as police officers. Not knowing who they were, he ran away in fear. Defendant denied robbing Bolanos and denied that Bolanos had cashed the $30 check for groceries.

Deborah Valiente testified that she recalled being with defendant on July 24, 1973, at the Safeway when Jackson asked defendant to take him to his apartment. Deborah remained at the store while the two men drove off. Later Deborah left the store and found defendant and Jackson in the parking lot waiting for her. Jackson was talking to another man. Deborah testified to essentially the same facts as did defendant except

that she personally did not know what was in the box that was transferred from defendant to Bolanos' automobile.

On cross-examination, Bolanos denied that he had purchased or talked of purchasing a television set from defendant and the other man on the night in question. He also denied seeing any young woman with the two men that night.

■ Defendant contends that the trial court abused its discretion in denying his motion for a new trial, arguing (1) that there were numerous instances of inconsistencies in the testimony of the victim Bolanos which render the verdict contrary to the evidence; (2) that there exists newly discovered evidence which he could not have, with reasonable diligence, discovered and produced at trial and (3) that he was denied effective trial counsel.

Specifically, defendant claims that the verdict is "contrary to the evidence" because:

(1) Defendant knew more than a month before trial of Bolanos' cashing his check for $30 at Safeway. This was before Bolanos mentioned such fact for the first time at the trial. (Bolanos did not mention this check during his testimony at the preliminary hearing.) Thus, defendant argues, it must be concluded that (a) defendant was either at the market when the check was cashed or was told about it by Bolanos himself; (b) that Bolanos, therefore, perjured himself in denying that he had seen defendant before the robbery; and (c) defendant's presence at or near the market when the check was cashed, renders almost geographically impossible Bolanos' claim that defendant, while on foot, thereafter intercepted him some distance away at an intersection beyond Bolanos' home. This contention is without merit, however, because the fact defendant knew of the $30 check before trial does not compel the conclusion that he must have learned of it from either Bolanos or from being at the market. There are many ways that defendant could have received such information; for example, he could have overheard (personally or through friends or counsel) information to that effect being discussed by the investigating officers, by the prosecutor, or by anyone privy to such information. Furthermore, it is not unreasonable to infer that defendant followed Bolanos from the grocery store to the area where defendant robbed Bolanos as claimed.

(2) Bolanos' testimony should be discredited because of the many "inconsistencies" in his testimony, (i.e., his claim that the robbery

occurred at an intersection beyond his home if coming from the Safeway store; that after being robbed and kicked, he had the presence of mind to secure defendant's license number; that police officers took two and a half hours to respond to his repeated calls; that Bolanos spent $63 for a family of two at Safeway within a period of three days of the robbery; that the assailants ran "through the rear of" a nearby school when the gates to such school were locked at the time; that at the preliminary hearing Bolanos first indicated defendant had taken his wallet and then later in his testimony indicated that the accomplice had done so.) ■ To warrant the rejection of the testimony that has been believed by the trier of fact, the testimony must be inherently improbable. (*People* v. *Jones,* 268 Cal.App.2d 161, 165 [73 Cal.Rptr. 727].) There must exist either a physical impossibility that it is true, or its falsity must be apparent without resorting to inferences or deductions. (*People* v. *Brown,* 6 Cal.App.3d 619, 623 [86 Cal.Rptr. 149]; *People* v. *Pearson,* 70 Cal.2d 218, 221 [74 Cal.Rptr. 281].) Conflicts and even testimony that is subject to justifiable suspicion do not justify the reversal of a judgment. (*People* v. *Pearson, supra.*) ■ Defendant's testimony merely created a conflict in the evidence. There is no reason to doubt Bolanos' testimony, and the inconsistencies which are claimed by defendant are either speculative and of no substance or are readily understandable in view of the use of an interpreter to examine Bolanos. Though, as defendant contends, there exist a few unanswerable questions about the precise details of the charged crime, these gaps are not sufficient to support his contention that they warrant finding that the verdict is contrary to the evidence because of inherent improbability. The determination of Bolanos' credibility was a matter within the province of the trier of fact. From the evidence presented, it was not unreasonable for the trier of fact to have concluded that the defendant robbed Bolanos as claimed. That evidence was substantial.

■ Defendant also erroneously contends that his motion for a new trial should have been granted on the alternate ground of "newly discovered evidence," referring to his lack of access before trial to his private investigator, Daniel Propp, and to the fact that an eyewitness, Clotilde de los Santos, was not called as a witness. However, Clotilde de los Santos' knowledge of what transpired on July 24 was not newly discovered, but was known to defendant before trial. She was subpoenaed as a defense witness for the trial. Further, it is apparent from her affidavit, offered at the motion for new trial, that her testimony which she could have offered was cumulative to not only defendant's testimony but also to the testimony of Deborah Valiente, who corroborated defen-

dant's testimony at trial. As such, the absence of her testimony cannot support his motion for new trial.

As to defendant's claim that he was denied access to Propp, his privately retained investigator, the record shows that his counsel knew of and used all information possessed by Propp in cross-examining Bolanos. In his affidavit, Propp states, the "results of my investigation was [*sic*] . . . given to . . . attorney for Mr. Meals," before trial. There was no error by the trial court in its denial of defendant's motion for a new trial.

Defendant also asserts that he was denied his right to adequate representation. ■ In order to justify relief on the ground of inadequate representation of counsel it must appear that counsel's lack of diligence reduced the trial to a "farce or a sham." (*People* v. *Floyd,* 1 Cal.3d 694, 709 [83 Cal.Rptr. 608, 464 P.2d 64]; *People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].) "It is not sufficient to allege merely that the attorney's tactics were poor, or that the case might have been handled more effectively. [Citations.] [¶] Rather, the defendant must affirmatively show that the omissions of defense counsel involved a critical issue, and that the omissions cannot be explained on the basis of any knowledgeable choice of tactics." (*People* v. *Floyd, supra,* at p. 709.) Moreover, defendant has the burden of establishing his allegation of inadequate representation " 'not as a matter of speculation but as a demonstrable reality.' " (*People* v. *Reeves,* 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35].) " 'In the heat of a trial, defendant's counsel is best able to determine proper tactics in the light of the jury's apparent reaction to the proceedings. Except in rare cases an appellate court should not attempt to second-guess trial counsel.' " (See *People* v. *Najera,* 8 Cal.3d 504, 516 [105 Cal.Rptr. 345, 503 P.2d 1353].)

■ To establish his claim, defendant argues that his counsel (1) failed to thoroughly impeach Bolanos by showing the inconsistencies between his testimony at trial and his testimony at the preliminary hearing; (2) advised the prosecution of facts which, if not disclosed prior to trial, could have successfully impeached the complainant, Bolanos; (3) failed to call Clotilde de los Santos as a defense witness; and (4) failed to thoroughly cross-examine Bolanos as to the details of his stop for gasoline, his route home, and his stop at the stop sign. He also asserts as error the "apparent" refusal of the public defender's investigation staff to aid in locating the man who was complainant's friend or to assist in any other meaningful way.

While it appears that defense counsel requested Bolanos to bring his checking account statement to court, there is no evidence whatsoever in the record suggesting that defense counsel breached any confidence between defendant and himself by giving or disclosing any information obtained from defendant to the prosecution, or that this request forewarned Bolanos, giving him an opportunity to fabricate responses to questions about checks which he had written to Safeway on and near the date of the robbery. Counsel's election to rely on the victim's own bank statements was clearly within the realm of trial tactics and the record shows that this tactical disclosure in no way prevented defense counsel from attempting to impeach Bolanos' testimony regarding the two checks he had written to Safeway within a period of only a few days.

As to defense counsel's failure to call Clotilde de los Santos as a witness, "the only witness without a felony record," a review of the record compels the conclusion that only by recourse to speculation and conjecture could it be said that this omission resulted in defendant's commitment. The selection of potential witnesses is a legitimate tactical decision for trial counsel to undertake, and it is a matter not ordinarily reviewable on appeal. (*People* v. *Floyd, supra,* 1 Cal.3d at pp. 709-710.) As discussed *supra,* Clotilde de los Santos' testimony was clearly cumulative to that of defendant himself, and to the observations of another defense witness, Deborah Valiente.

Nor can it be said that his defense was rendered ineffective by his counsel's failure to show inconsistencies between Bolanos' testimony at trial and at the preliminary hearing or by his counsel's failure to thoroughly cross-examine Bolanos as to the details of his stop for gasoline, the route he took home, etc. It is purely a matter of speculation that further questioning of Bolanos would have successfully impeached his testimony, as defendant argues. In fact, such further examination might have strengthened the prosecution's case. "While defendant's counsel on appeal may feel that they would have tried the case in a different manner, the deputy public defender's conduct of the defense is not properly subject to the criticism now levelled at it." (*People* v. *Spencer,* 60 Cal.2d 64, 91-92 [31 Cal.Rptr. 782, 383 P.2d 134].) Further, there is no evidence in the record indicating that the public defender's office did not undertake a proper investigation. The defendant was adequately represented by counsel, and there is no basis for the assertion that defendant was deprived of a fair trial. In fact, quite to the contrary, the record demonstrates that the defendant was competently represented by counsel. No constitutional right of the defendant was violated.

■ Referring to an inconsistency between the reporter's transcript and the clerk's transcript as to whether defendant admitted certain prior felony convictions and to the absence of evidence in the record showing that defendant had, in fact, suffered the alleged felonies, defendant contends that the trial court improperly found the priors to be true. Defendant is correct in asserting that the minutes of November 20, 1973 in the clerk's transcript erroneously recite that defendant admitted the five prior felonies alleged against him. The reporter's transcript discloses that defendant expressly denied the commission of such prior offenses. Additionally, however, the record is ambiguous as to whether the trial judge made a specific finding on the priors as required under Penal Code section 1158.

Reference to the prior convictions must be included in the pronouncement of judgment. If the record is silent in that regard, in the absence of evidence to the contrary, it may be inferred that the omission was an act of leniency by the trial court, and the silence operates as a finding that the prior convictions were not true. (*In re Candelario,* 3 Cal.3d 702, 706 [91 Cal.Rptr. 497, 477 P.2d 729].)

In the present case, defense counsel, at the time of sentencing, pointed out to the court that this was the first instance in which defendant had been charged with a crime suggesting the concept of violence and asked if that "in the interest of justice the Court perhaps might strike the priors." He then submitted the matter and made a reference with regard to the probation report. The trial court then reiterated the alleged prior felony convictions and asked, "One of these priors has not been determined; is that correct?" The following colloquy then occurred:

"MR. DEITCH [defense counsel]: The sixth, your Honor. The defendant tells me the first was a crime committed while he was a juvenile.

"THE COURT: Well, according to the file, the '69 prior was stricken on motion of the People.

"MRS. GOODSON [Deputy District Attorney]: I think at the time we only had proof of five of the priors, your Honor.

"MR. DEITCH: I understand that on the first prior the defendant was handled as a juvenile.

"THE COURT: I might, for the record, say that the Court finds the defendant unsuitable for a further commitment to the California

Rehabilitation Center, because that thought occurred to the Court, and in view of the present conviction, as well as the fact that the defendant deserted, the Court feels that he is not suitable.

"In the interest of justice, the Court will strike the first and second priors; that is the conviction in 1961 of 11530, Health and Safety Code, and a conviction in 1962 of 11530 of the Health and Safety Code."

No further mention was made as to the remaining three alleged prior convictions. However, both the minute order of March 4, 1974, and the formal judgment recite that the court found the third, fourth and fifth prior convictions "true as heretofore admitted by defendant." It appears from the record that the court, the clerk of the court, defense counsel, and the deputy district attorney operated under the erroneous assumption that defendant had previously admitted the prior felonies. Since the court struck two of the priors, its failure to make an express finding as to the third, fourth and fifth alleged priors clearly was not intended as an act of leniency and cannot reasonably be construed as a finding in favor of defendant on the priors. (Cf. *People* v. *Pierson,* 273 Cal.App.2d 130, 134 [77 Cal.Rptr. 888].) However, because of the ambiguity in the record between the court's findings and the judgment and as to what evidence was actually offered to prove the priors, this court believes defendant is entitled to a limited new trial on the issue of the prior felonies. (Cf. *People* v. *Morton,* 41 Cal.2d 536, 543-545 [261 P.2d 523].)

■ Citing Penal Code section 2900.5[2] defendant contends that he was entitled to credit for the time already served despite the fact that there was a parole hold against him. Since Penal Code section 2900.5 in no way excepts credit for presentence custody where a defendant is also on a parole hold prior to sentencing, the statute is operative as to

[2]Penal Code section 2900.5 provides in pertinent part:

"(a) In all felony convictions, either by plea or by verdict, when the defendant has been in custody in any city, county, or city and county jail, all days of custody of the defendant from the date of arrest to the date on which the serving of the sentence imposed commences, including days served as a condition of probation in compliance with a court order, shall be credited upon his sentence, or credited to any fine which may be imposed, at the rate of not less than twenty dollars ($20) per day, or more, in the discretion of the court imposing the sentence. If the total number of days in custody exceeds the number of days of the sentence to be imposed, the entire sentence shall be deemed to have been served. In any case where the court has imposed both a prison sentence and a fine, any days to be credited to the defendant shall first be applied to the sentence imposed, and thereafter such remaining days, if any, shall be applied to the fine.

"(b) For the purposes of this section, credit shall be given only where the custody to be credited is attributable to charges arising from the same criminal act or acts for which the defendant has been convicted."

defendant in the instant case and the trial court improperly denied him such credit. (See *In re Kapperman,* 11 Cal.3d 542, 547 [114 Cal.Rptr. 97, 522 P.2d 657]; *In re Miller,* 41 Cal.App.3d 1046, 1048-1049 [116 Cal.Rptr. 624].)

Therefore, that part of the judgment finding defendant's prior convictions to be true is reversed, and the matter is hereby remanded to the superior court for the purpose of computing the time defendant is to be credited with under section 2900.5 of the Penal Code, and for a limited new trial on the issue of the prior felonies. In all other respects, the judgment is affirmed; defendant's attempted appeal from the order denying his motion for a new trial is dismissed.

Kaus, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied June 16, 1975, by operation of law pursuant to California Rules of Court, rule 27e. Appellant's petition for a hearing by the Supreme Court was denied July 30, 1975.