[Crim. No. 28188. Second Dist., Div. One. Jan. 5, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
EDDRICK LEWIS HARRIS, Defendant and Appellant.

## COUNSEL

Craig H. Anderson, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Frederick R. Millar, Jr., and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## HANSON, J.—

### INTRODUCTION

Defendant Eddrick Lewis Harris (hereinafter defendant) following a jury trial appeals from conviction of grand theft in violation of Penal Code section 487, subdivision 1 (count I) and robbery in the first degree in violation of Penal Code section 211 (count II).[1] Defendant appeared in propria persona at both the preliminary hearing and at the trial.

### FACTS

*As to Count I*

On June 22, 1975, defendant Harris entered the Broadway-Crenshaw Department Store and had a brief conversation with Robert Coleman

---

[1]The jury found defendant not guilty of count III (grand theft—Pen. Code, § 487, subd. 1) allegedly committed on July 13, 1975, the same date as the count II conviction.

about a television set on display. After the conversation had ended, Mr. Coleman saw defendant walking around another department and then saw him leaving the store with the Sony color television set valued at about $410. Mr. Coleman had seen defendant two or three times before and recognized him during their conversation. He was certain that defendant was the man who took the television set.

*As to Counts II and III*

On July 13, 1975, at approximately 3:30 p.m., Vicki Govan was working at the jewelry counter in the Broadway-Crenshaw store. While she was showing a lady customer a ring, defendant Harris walked up to the case. She had seen him on several other occasions and knew him by the name "Pee Wee." He (Harris) pulled out a knife which looked like a butcher knife with a wooden handle. Defendant started prying open the display case where the rubber was connected to the glass. He put the knife in the seam at one point and then moved it along the seam to another point and the glass came loose and he started to lift it up. Miss Govan told him to "Stop" and put her hands on top of the glass, leaning on it as he was lifting it up with her hands still on top of the glass. Defendant exerted more pressure than she did and reached in and got three cases of diamonds.

Miss Govan picked the phone up as defendant had reached one end of the counter. He (defendant) came back and got some more rings. He took a total of four more trays of diamond rings valued at approximately $11,000.

When defendant was almost to the door, Miss Govan yelled to the manager that he had her diamonds and was running out of the door. The manager started to run to the door, but defendant was already out of the door. Miss Govan could see him going across a divider in the street over a gate. She testified that she was not afraid of defendant when he did this as she did not think that defendant was serious. However, when she realized that defendant was going to take the diamonds she went to call security.

*Defense*

Defendant Harris testified on his own behalf. He admitted being in the Broadway-Crenshaw Department Store on the two days in question, but denied taking either the television set or the diamond rings.

By way of alibi as to the July 13, 1975, date, his mother, Lizzy Williams, and Frank Harris testified defendant was at home between 3 and 4:30 p.m. on that date.

## CONTENTIONS

On appeal defendant contends (1) that he was denied the effective assistance of counsel, and (2) there was insufficient evidence to support the force or fear requisite to constitute the robbery (count II) conviction.

## DISCUSSION

We conclude the record does not support either of defendant's contentions and affirm the judgments of conviction.

## I

The thrust of defendant's first contention advanced by appointed counsel on appeal is directed at a reversal of the conviction of both counts I and II in that the court erred in granting defendant's request to appear in propria persona at both the preliminary hearing and trial and defendant ineffectively represented himself requiring a reversal.

The United States Supreme Court in *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525], held that a defendant has an independent constitutional right to represent himself which is absolute if he requests it and knowingly and intelligently waives his right to counsel.

■ Here, three separate judges (at the preliminary hearing, arraignment, and trial) at defendant's request granted his request to appear in propria persona. The reporter's transcript of the preliminary hearing[2]

---

[2]The reporter's transcript of the preliminary hearing conducted on August 28, 1975, contained in the clerk's transcript on appeal reflects the following colloquy between defendant and the court:

"THE COURT: The matter of Eddrick Harris.

"This is the time and place for the preliminary examination in your matter.

"I assume that at the arraignment you were informed of the charges against you and that you were handed a copy of the complaint which states those charges, also, that you were advised of your constitutional rights.

"I am going to readvise you as to some of your rights at this time.

"First of all, you are entitled to a speedy and public trial.

"You are also entitled to have an attorney of your own choosing through all of these proceedings; however, if at any time you do not have one or cannot afford one, the court will appoint one from the office of the public defender to represent you.

"You are also entitled to be confronted by the witnesses testifying against you and to

the processes of this court to issue subpoenas in your behalf for any witnesses which you may have during all of these proceedings at no cost to you.

"You cannot be compelled to be a witness against yourself; therefore, you don't have to testify. However, if you choose to testify, you may then be cross-examined by the People.

"If you are held to answer in this court and an information is then filed against you in the Superior Court, you are then entitled to a trial by a jury or a trial by the court sitting without a jury, if the People also consent.

"You are also entitled to be released on reasonable bail.

"Do you understand your rights as I have explained them to you?

"THE DEFENDANT: Yes.

"MR. CERVANTES [Deputy Public Defender]: Regarding the Harris matter, Mr. Harris and I have had some difficulty in arriving at an agreement as to whether or not I would be able to represent him in this matter.

"If the court would care to inquire of the defendant—

"THE COURT: What is the difficulty?

"MR. CERVANTES: The difficulty is that it appears that Mr. Harris would rather conduct his own defense.

"I believe that is the correct statement of the facts.

"THE COURT: Is that correct, Mr. Harris?

"THE DEFENDANT: Yes, it is, your Honor.

"THE COURT: How much education do you have, Mr. Harris?

"THE DEFENDANT: I went to 12th grade.

"THE COURT: How many times have you been in court before and seen any defenses?

"THE DEFENDANT: Not very many.

"THE COURT: Well, how many? Have you been in before once, twice?

"THE DEFENDANT: About twice.

"THE COURT: You have heard the old saying that a person who acts as his own attorney has a fool for a client? You have heard that, haven't you?

"THE DEFENDANT: No.

"THE COURT: Do you know what that means?

"THE DEFENDANT: Yes, sir.

"THE COURT: In other words, it means you are a fool if you represent yourself.

"Is that what you wish to do?

"THE DEFENDANT: I praise my God in front of me, and I believe—

"THE COURT: Well, we go according to the law and the law only, and you will be bound by all the rules attorneys are bound by. Do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: You do know how to read and write all right, do you not?

"THE DEFENDANT: Yes, sir.

"THE COURT: All right.

"He may defend himself.

"The last opinion issued by the Supreme Court of the United States, although I disagree with it vehemently, states the defendants may defend themselves as long as they read and write.

"He may defend himself.

"MR. CERVANTES: Thank you, your Honor.

"May the record reflect I am giving the defendant all the written material relative to this case I have in my possession?

"THE COURT: Very well.

"MR. WIATT [Deputy District Attorney]: The People are ready to proceed, your Honor.

"THE COURT: Are you ready, Mr. Harris?

"THE DEFENDANT: Yes, I am, your Honor."

and the arraignment proceedings[3] reflects defendant, who said he knew how to read and count, was fully advised of his right to counsel,

[3]The reporter's transcript of the arraignment conducted on September 11, 1975, reflects the following colloquy:

"THE COURT: People versus Eddrick Lewis Harris.

"All right. Eddrick Lewis Harris, is that your true name, sir?

"THE DEFENDANT: Yes, sir.

"THE COURT: Do you have private counsel to represent you in this matter?

"THE DEFENDANT: Myself, Your Honor.

"THE COURT: Do you have funds to employ private counsel?

"THE DEFENDANT: No, I do not.

"THE COURT: Do I understand you want to represent yourself rather than have the appointment of the public defender?

"THE DEFENDANT: Yes, sir.

"THE COURT: Why?

"THE DEFENDANT: At the first trial the public defender did not show me any satisfaction of how he was going to handle my case.

"THE COURT: You have been through trial on this once before?

"THE DEFENDANT: Yes, I have, Your Honor. Preliminary hearing.

"THE COURT: That is what you are talking about, a preliminary hearing. Okay.

"THE DEFENDANT: Yes, sir.

"THE COURT: Do you know what you are charged with?

"THE DEFENDANT: Grand theft and robbery, Your Honor.

"THE COURT: How do you prove grand theft? How does the district attorney prove grand theft?

"THE DEFENDANT: He has no way of proving grand theft.

"THE COURT: I am not asking you that, whether you are guilty or not. I am not going to try that today. I am saying: What does he have to prove to establish to a jury that you are guilty of grand theft?

"THE DEFENDANT: Evidence or either testimony of a witness.

"THE COURT: What is grand theft? Let's try that.

"THE DEFENDANT: Grand theft is taking property or private property assuming more than $200 worth of value.

"THE COURT: What is robbery?

"THE DEFENDANT: Robbery is the taking of something from some person without their permission.

"THE COURT: What is the penalty for grand theft?

"THE DEFENDANT: Penalty for grand theft is one to 15 years.

"THE COURT: What is the penalty for robbery?

"THE DEFENDANT: Penalty for robbery is five to life.

"THE COURT: You want to shoot craps on five to life representing yourself?

"THE DEFENDANT: Yes.

"THE COURT: You do realize that if you go pro per there is not going to be anybody in court to object to any questions which may be asked by a district attorney which may be improper? The court is not going to intervene.

"THE DEFENDANT: I understand that, Your Honor.

"THE COURT: By the same token, if you phrase your questions to a witness and they are improper and the district attorney objects—the district attorney objects to it—how are you going to cure your question? How are you going to make it admissible?

"THE DEFENDANT: By restating the question, I guess.

"THE COURT: You feel that you are capable of presenting a better defense than an attorney?

"THE DEFENDANT: At this time I do, Your Honor.

"THE COURT: What do you mean, 'At this time'?

questioned by the court and warned of pitfalls of self-representation and that he would be bound by the same rules that attorneys are bound by

"THE DEFENDANT: Because I feel I know the case better than the representative—to represent me.

"THE COURT: You may know the facts of the case.

"THE DEFENDANT: I may not, at the present time—I will admit I am ignorant to a point of law to some degree; but with my God's help, I know I can.

"THE COURT: I commend you upon your belief in God, but he isn't going to be down here telling you how to ask the questions.

"THE DEFENDANT: I think I can ask the questions, Your Honor.

"If the court would like, I would like to ask for public defender co-counsel.

"THE COURT: The public defender will not accept those appointments. I don't blame the public defender. That is not what the county charter provides, that they act as co-counsel.

"All right. You may represent yourself in pro per.

"Arraign the defendant, Mr. Kelly.

"MR. KELLY [Deputy District Attorney]: Eddrick Lewis Harris, is that your true name, sir?

"THE DEFENDANT: Yes, sir.

"MR. KELLY: In Superior Court Information No. A319904 you are charged in Count I and Count III with a violation of section 487 of the Penal Code, 487, subdivision (1), to wit, grand theft, and in Count II with a violation of section 211 of the Penal Code, to wit, robbery.

"Mr. Harris, do you waive further reading of the Information and statement of constitutional rights?

"THE DEFENDANT: Waive further reading, yes, I do.

"MR. KELLY: Mr. Harris, how do you plead to Superior Court Information No. A319904, guilty or not guilty?

"THE DEFENDANT: Not guilty.

"May I pass this to the clerk?

"MR. KELLY: May the record reflect I am giving to Mr. Harris a copy of the Information, Your Honor.

"THE DEFENDANT: I also ask the court that I may have all transcripts of my trial. I did not receive all transcripts of my trial.

"THE COURT: Do you have a copy of the preliminary transcript?

"THE CLERK: Your Honor, there was only one copy provided with the case file.

"THE DEFENDANT: The preliminary and arraignment trial, Your Honor.

"MR. KELLY: If Your Honor can give me your copy of the transcript, I can have it Xeroxed and give it to Mr. Harris.

"THE COURT: All right.

"Mr. Kelly, the defendant has handed to the court a motion to be released without bail. I would like to have you examine that and respond.

"While you are doing so, you have been handed, I believe, Mr. Harris, a petition to proceed in propria persona. Have you completed that petition?

"THE DEFENDANT: No, sir, Your Honor.

"THE COURT: That will be necessary that you do and file that with the clerk.

"THE DEFENDANT: Yes, sir.

"THE COURT: Comments on his petition for being released without bail, Mr. Kelly?

"MR. KELLY: The People oppose an O.R. release on him and suggest that the defendant go through the normal O.R. procedure in order to ascertain whether or not he is a suitable candidate for O.R.

"With respect to the other statements the defendant has made, I believe that once he is given pro per status I think it entitles him to certain time in the jail law library.

"THE COURT: I agree.

during the conduct of the proceedings. The trial judge conveyed to defendant in no uncertain terms the foolishness of anyone (even attorneys) representing himself in a criminal matter. Defendant after such admonitions chose to conduct his own defense and now, on appeal, seeks a second bite at the apple claiming the court erred in allowing him

"THE DEFENDANT: Excuse me, Your Honor. The jail library is very inadequate to—

"THE COURT: This is what you have chosen to do, to represent yourself; and you are going to get the same privileges any other pro per in that county jail has.

"If you feel it is inadequate, it is inadequate. I don't think it is. But, in any event, you are stuck with it unless you are out on bail.

"You may file an application for release for pro per, which will be set for hearing when the O.R. unit—strike that.

"You may file an application for release on your own recognizance, which will be set for hearing in this court when you have completed the application and they have completed the necessary investigation.

"I will not release anybody O.R. without an investigation by that unit.

"THE DEFENDANT: Yes, sir.

"THE COURT: All right.

"THE DEFENDANT: Can I ask for a reduction of bail, Your Honor, at this time?

"THE COURT: We will consider that at the time the hearing on the release comes through and the report of the O.R. unit.

"What date do you suggest we proceed on this, Mr. Kelly?

"MR. KELLY: I think it is about three weeks, isn't it, to prepare an O.R. report?

"THE COURT: I think so. Let's set the O.R. hearing—

"Let's set the hearing on the O.R. release, pretrial and trial setting for three weeks from today. That would make it October 2.

"I will reserve ruling upon your motion for release without bail pending receipt of the O.R. report.

"I want to state for the record I think you are making a big mistake, but it is your liberty, not mine.

"MR. KELLY: I believe there is a bench warrant outstanding from the Santa Monica court for Mr. Harris on a case that he has pending over there.

"THE DEFENDANT: What kind of case is this? I am not aware of any other case other than these two cases I have.

"MR. KELLY: I don't know. I don't know what court it is in Santa Monica. There may be some way of notifying them over there.

"THE COURT: I do not see anything here, Mr. Kelly.

"MR. KELLY: I was informed this morning there is a bench warrant outstanding for Mr. Harris.

"THE COURT: He is not going to go anyplace for a while until we find out what happens to him on the O.R.

"THE DEFENDANT: Your Honor, will I be allowed five days per week in the legal library and three phone calls a day?

"THE COURT: You will be given the regular pro per privileges.

"THE DEFENDANT: Thank you, Your Honor.

"MR. KELLY: Will the bailiff keep Mr. Harris down here until I get the transcript Xeroxed so we can transmit it to him?

"THE DEFENDANT: I need a legal runner, Your Honor.

"THE COURT: You will get the same privileges any other pro per gets in county jail.

"What runners they get, you get. What runners they don't get, you don't get.

"THE DEFENDANT: I will sign up for it.

"THE COURT: All right."

to proceed in propria persona. Defendant Harris' counsel on appeal asserts that if counsel had been appointed the matter should not have been tried and a plea bargain should have been negotiated.

We hold the record reflects that defendant knowingly and intelligently waived his right to counsel and under *Faretta* v. *California, supra,* 422 U.S. 806, the court had no authority to force counsel upon him and properly granted his motion to defend himself.

■ Moreover, the California case law, pre-*Faretta,* was that a defendant is not entitled to have his case presented in court by himself and by cocounsel simultaneously. (*People* v. *Sharp* (1972) 7 Cal.3d 448, 459 [103 Cal.Rptr. 233, 499 P.2d 489]; *People* v. *Mattson* (1959) 51 Cal.2d 777, 787-789 [336 P.2d 937]; *Thomas* v. *Superior Court* (1976) 54 Cal.App.3d 1054, 1060 [126 Cal.Rptr. 830]; *People* v. *Hill* (1969) 70 Cal.2d 678, 692 [76 Cal.Rptr. 225, 452 P.2d 329]; see also *Ligda* v. *Superior Court* (1970) 5 Cal.App.3d 811, 820 [85 Cal.Rptr. 744]; *People* v. *Adame* (1959) 169 Cal.App.2d 587, 601 [337 P.2d 477].)

Neither *Faretta* nor subsequent California case law changes the above rule. In *Faretta* at page 835, footnote 46 [45 L.Ed.2d at page 581], the court said: "[O]f course, a State *may*—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary. . . ." (Italics added.)

The word "may" renders it merely within the discretion of the trial court and not mandated by law. In *People* v. *McDaniel* (1976) 16 Cal.3d 156, 162, 168, footnote 6 [127 Cal.Rptr. 467, 545 P.2d 843], the California Supreme Court noted that *United States* v. *Swinton* (S.D.N.Y. 1975) 400 F.Supp. 805, 807, held that *Faretta* did not give a constitutional right to cocounsel.

Here, the record reflects defendant did not make a bona fide serious motion for cocounsel after the court indicated his choice to appear in propria persona was not a wise one saying, "If the court would like, I would like to ask for public defender co-counsel." We hold the court did not abuse its discretion in refusing to appoint cocounsel.

Defendant's contention that he inadequately or ineffectively represented himself cannot be urged or sustained on appeal once he has elected to

"shoot craps" in the trial court and appear in propria persona. He was thoroughly warned of the pitfalls he would face as he represented himself. ■ However, assuming arguendo a defendant appearing in propria persona at trial could on appeal urge he ineffectively represented himself "in order to justify relief on the ground of inadequate representation of counsel it must appear that counsel's lack of diligence reduced the trial to a 'farce or a sham.' " (*People* v. *Meals* (1975) 48 Cal.App.3d 215, 223 [121 Cal.Rptr. 742].) "Moreover, defendant has the burden of establishing his allegation of inadequate representation ' "not as a matter of speculation but as a demonstrable reality." ' " (*Id.*; see *People* v. *Stephenson* (1974) 10 Cal.3d 652, 661 [111 Cal.Rptr. 556, 517 P.2d 820].)

Here, the trial judge went to great length to explain various stages of the proceedings to defendant. Defendant has not shown as "a demonstrable reality" that the defense was a "farce or a sham" and his contention that he did not adequately represent himself is not sustainable.

## II

Defendant's final contention is that there was insufficient evidence to support the force or fear requisite to constitute his robbery conviction (count II).

■ In considering the sufficiency of the evidence the appellate court must view all of the evidence, direct and indirect, in the light most favorable to the respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce therefrom; the evidence may not be reweighed on appeal (*People* v. *Williams* (1971) 5 Cal.3d 211, 214 [95 Cal.Rptr. 530, 485 P.2d 1146]; *People* v. *Roberts* (1975) 51 Cal.App.3d 125, 138 [123 Cal.Rptr. 893]).

The trial court instructed the jury on CALJIC No. 14.20 (grand and petty theft) and CALJIC No. 9.10 (robbery—defined)[4] in respect to the July 13, 1975, occurrence involving the diamond rings as charged in counts II and III. The court also instructed on CALJIC No. 17.03 (two counts—same occurrence—only one crime).[5] In addition the court instructed on the lesser included offense of petty theft as to each count.

[4]CALJIC No. 9.10 as given read: "Robbery is the taking of personal property of any value in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear and with the specific intent permanently to deprive the owner of his property."

[5]CALJIC No. 17.03 as given read: "The defendant is charged in Count Two with the crime of robbery and in Count Three with the crime of grand theft. These charges are

■ We hold the testimony that defendant was armed with a butcher-type knife in plain view to open the display case and overcame the force exerted by Miss Govan to keep the glass on the case, coupled with the fact that Miss Govan had to call a security guard, constitutes substantial direct and indirect evidence to support the jury's finding that defendant employed "force or fear" in obtaining the diamonds.

DISPOSITION

The judgment is affirmed.

Lillie, Acting P. J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 3, 1977.

---

made in the alternative and in effect allege that the defendant committed an unlawful act which constitutes either the crime of robbery or the crime of grand theft. If you find that the defendant committed an act or acts constituting one of the crimes so charged, you then must determine which of the offenses so charged was thereby committed.

"In order to find the defendant guilty you must all agree as to the particular offense committed and, if you find the defendant guilty of one of such offenses, you must find him not guilty of the other."