[Civ. No. 47919. Second Dist., Div. One. Mar. 17, 1977.]

GERALD L. CHALEFF, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent.

722

COUNSEL

Wilbur F. Littlefield, Public Defender, John M. Moore, Chief Deputy Public Defender, and Harold E. Shabo, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

OPINION

THOMPSON, J.— ■ This is a petition for writ of review to test the validity of trial court action adjudicating a deputy public defender in

contempt of court for refusal to act as an adviser to a defendant who had been granted permission to proceed in propria persona in a criminal proceeding. It raises the issue of the obligation of a deputy public defender to accept an appointment in that capacity over his objection. Concluding that the petitioner in the case at bench established reasons for his refusal to accept the appointment pursuant to rule 2-111 of the California Rules of Professional Conduct, we issued our writ of review annulling the action of the trial court.

John L. Miller was charged with murder by an information filed in the Los Angeles Superior Court. Gerald L. Chaleff, a deputy public defender, was appointed to represent him over Miller's objection. Miller sought permission to appear in propria persona. After a series of hearings to determine Miller's capacity for self-representation during the course of which Miller indicated a desire for advisory counsel, the trial court granted Miller permission to represent himself. Confirming that Miller still desired advisory counsel, the court appointed "the public defender" in that capacity. (*People* v. *Mattson* (1959) 51 Cal.2d 777, 797 [336 P.2d 937].)

Chaleff stated, "I would have to respectfully decline." He gave as his reasons: (1) the failure of Government Code section 27706 to authorize the public defender to act in an advisory capacity; (2) the adverse consequences to his other case load of being required to appear in court on a schedule dictated by Miller; (3) Miller's refusal to permit a workable relationship of attorney and client to be established; (4) the relationship was one in which Miller would not permit Chaleff to present defenses which Chaleff believed were available; and (5) "severe ethical problems in relation to being an advisor in that what [was] asked of [Chaleff]" could put him in a position where he would "have to come to the court and report to the court that [he felt] the conduct by . . . Miller was wrong." Chaleff amplified his fourth reason, stating: "I'm referring to . . . issues [other than Miller's decision to testify] such as witnesses or other types of conduct that may come about that may cause me to feel that it violates my ethical responsibilities as an attorney."

Chaleff further noted to the court a conflict with Miller over presentation of the defense, adding: "I might say that I'm sort of handcuffed explaining to this court because of the attorney-client

privilege and the fact that Mr. Miller has stated that he would like me to ... retain confidential anything he's told me .... [1]

Despite Chaleff's objection and explanation, the court insisted in its order, and when Chaleff did not agree to serve as ordered, found him in contempt. The trial court then appointed private counsel to advise Miller. Chaleff filed the petition for writ of review which brings the contempt matter to this court.

Public defenders and their deputies are subject to the Rules of Professional Conduct governing the action of lawyers no less than other members of the State Bar. Rule 2-111 of the Rules of Professional Conduct permits a lawyer to withdraw from representation of a client if the client insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by a good faith argument for extension, modification, or reversal of existing law (subd. (C)(1)(a)), or if the employment creates a situation in which it is unreasonably difficult for the member of the State Bar to carry out his employment effectively (subd. (C)(1)(d)).

On its face and in its spirit, rule 2-111 is applicable to an attorney appointed to act as an adviser to a defendant conducting his own defense. The language of the rule contains no exception. The spirit of the rule exemplifies the proposition that while the attorney's duty is to his client, he cannot be placed in the position where discharging that duty impinges upon his ethical responsibility as a member of the bar. (See *People* v. *Mattson, supra,* 51 Cal.2d 777, 793.)

Here Chaleff called to the court's attention the fact that his representation of Miller could place him in an untenable ethical position. Here Chaleff went as far as he could go in the disclosure without divulging privileged information. In that situation, rule 2-111 permitted Chaleff to withdraw from the representation of Miller. The court, by holding

---

[1]Evidence well after the fact shows that a significant difference between Miller and Chaleff was Miller's self-destructive urge to so conduct the defense as to receive the death penalty. That evidence was not before the trial court when it made its order and hence cannot be considered in testing the trial court's action.

Chaleff in contempt, placed upon Chaleff a burden beyond that allowed by the rule.[2] The court in so doing exceeded its authority.

The judgment of contempt is annulled.

Lillie, Acting P. J., concurred.

HANSON, J.—I concur with the majority opinion that the trial court exceeded its authority and that the judgment of contempt should be annulled. However, I have serious reservations in arriving at that conclusion, from this record, based on rule 2-111 of the California Rules of Professional Conduct as discussed in the majority opinion.[1]

I arrive at the same result by addressing directly what I perceive to be the critical issue presented by the record. The key issue as I see it is whether or not the trial court in a criminal case where the defendant has demanded and been granted the right of self-representation pursuant to *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525], is empowered to appoint a public defender to serve in the capacity of "advisory counsel" at (1) defendant's request OR (2) under the inherent power of the court.

A more detailed treatment of the underlying criminal case and the contempt order as disclosed by the record may serve to sharpen the root issue.

[2]Because we rest our decision upon rule 2-111 of the Rules of Professional Conduct, we indicate neither agreement nor disagreement with the holding of *Ligda* v. *Superior Court* (1970) 5 Cal.App.3d 811 [85 Cal.Rptr. 744] to the effect that a deputy public defender may, with his consent, be appointed as advisory counsel despite the absence of authority for such an appointment in Government Code section 27706 which defines the authority of the public defender without mentioning or implying that the authority includes service as an adviser to a person conducting his own defense.

[1]While clearly the rules of professional conduct and ethical standards apply equally to all attorneys whether a deputy public defender or a private practitioner, as I read the record Deputy Public Defender Chaleff's claims of conflict and personal ethical problems basically stem from the fact that defendant Miller wanted to plead guilty as charged and be sentenced according to law while Deputy Public Defender Chaleff wanted to proceed to trial and put on a defense.

My concern is that the majority opinion may be construed as across the board sanctioning such an approach, which would result in unnecessary and expensive lengthy trials in a large percent of criminal cases where defendants who desire to plead guilty are represented by public defenders. Here the end result, following trial, was the same as desired by defendant at the outset of the criminal proceedings. It is the trial court's ultimate responsibility with the assistance of counsel to insure during the taking of the plea of guilty, especially to first degree murder, that all the defendant's constitutional safeguards are protected, that the pleas are intelligently and voluntarily made, and that defendant did in fact commit the crime to which he has pleaded guilty.

## The Underlying Criminal Case

The record discloses that in the case of People v. Miller (John Lawrence), Los Angeles Superior Court No. A016192, defendant Miller was charged with the murder of his parents in violation of Penal Code section 187 on October 21, 1975.

On October 30, 1975, defendant Miller was arraigned and the court appointed Deputy Public Defender Chaleff (hereinafter attorney Chaleff) as his defense counsel despite his statement that he did not need an attorney. Attorney Chaleff also represented defendant Miller over the defendant's objection at the preliminary hearing on November 12, 1975.

Special hearings were conducted on November 26, December 1, 5, 22, and 23, 1975, to determine whether or not defendant Miller could represent himself in propria persona. The court after fully advising defendant Miller of the pitfalls, dangers and consequences of acting as his own counsel and determining that he was mentally capable, literate, fully informed and had made (both orally and in writing) a voluntary, intelligent and understanding waiver of his right to representation by appointed counsel granted him the right to represent himself in propria persona after the December 23 hearing.

Defendant Miller at the November 26 hearing had indicated he would like "advisory counsel" and that the public defender would be acceptable to serve in that capacity. The court at the December 23 hearing, after granting defendant Miller the right to represent himself, said: "Now, in conformance with what you've told me previously, I take it that you're asking the Court to appoint a lawyer to act as advisory counsel. [¶] Is that correct? [¶] THE DEFENDANT: Yes, that's correct. [¶] THE COURT: And I take it that you still do not have funds to employ your own lawyer for this purpose? [¶] THE DEFENDANT: That's correct. [¶] THE COURT: Very well, the public defender is appointed as advisory counsel to aid the defendant if and when he requests help *and* to be available to represent the defendant should the Court find it necessary at any time to terminate the defendant's right of self-representation [due] to the misconduct of the defendant pursuant to Penal Code Section 987, Subdivision a, *Faretta versus California,* and this Court's inherent power to conduct this proceedings in an orderly and expeditious manner." (Italics added.)

Colloquy between the court and attorney Chaleff brought out that Chaleff would not be responsible for conduct of the trial, would not be Miller's investigator or runner, but Chaleff's "duties would be to render legal advice and counsel if and when the defendant requested it *and* in the event that the defendant's pro per privileges were terminated to then conduct the trial of the case." (Italics added.) While attorney Chaleff would not initiate on his own any legal matters (motions, etc.), he could volunteer to defendant who could accept or reject.

Following a recitation of his reasons for his refusal to act as "advisory counsel" set forth in the majority opinion, attorney Chaleff respectfully declined and the court found him in contempt and fined him $50 with a "stay" to purge himself of contempt by agreeing to act as "advisory counsel" or unless sentence was further stayed by a higher court.[2]

The contempt order adjudicating attorney Chaleff guilty of contempt satisfies the technical requirements of Code of Civil Procedure section

[2]The court following attorney Chaleff's refusal to act as "advisory counsel" then appointed Jack S. Stanley, "a member of the private bar, as advisory counsel to aid the defendant if and when he requests help *and* to be available to represent the defendant should the Court find it necessary at any time to terminate the defendant's right of self-representation." (Italics added.) Mr. Stanley accepted the appointment as "advisory counsel."

The court transcript of proceedings held when defendant Miller was sentenced on April 19, 1976, in which defendant Miller was sentenced to death declares that Miller stated the "conflict" between himself and attorney Chaleff had been that he (Miller) wanted to plead guilty and get the thing over with and wanted no defense but that attorney Chaleff felt there should be a defense.* Defendant Miller also told the court: "But you have been concerned all along the line with reversible error. In that regard you have had Mr. Standby Adviser here being your assistant, insuring against reversible error, as you yourself stated when we were going through the instructions for the jury on the guilt phase. [¶] I personally don't feel that he has done his job and I think there is reversible error, and I don't want reversible error, because I don't want a retrial . . . [¶] I think that the verdict and sentence are both just. I have no disagreements there at all."

*The reporter's transcript contains the following colloquy:

"THE COURT: This matter is before the Court on hearing of probation and sentence at this time, Mr. Miller. We are not here to take evidence.

"THE DEFENDANT: You made statements as to what the conflict was. Okay. I will tell you what the conflict was. Since you won't let him speak, I will state it myself.

"The conflict was that I wanted to simply plead guilty and get this thing over with and, since I wasn't allowed to, then I wanted no defense, and he felt that ethically he could not put on no defense. So that was the basis of our conflict of interest.

"That is why I went pro per and that is why no defense was put on ultimately.

"I will say this, that by doing what I did my pro per status could have been pulled, had it been realized what I was doing.—"

1211[3] which are jurisdictional and contains sufficient facts to constitute a legal contempt (see *Vaughn* v. *Municipal Court* (1967) 252 Cal.App.2d 348, 357 [60 Cal.Rptr. 575]) *provided the court was empowered to appoint attorney Chaleff as "advisory counsel."*

## DISCUSSION

*Does defendant Miller have a legal right to "advisory counsel" having requested and been granted the right of self-representation pursuant to* Faretta *v.* California, supra, *422 U.S. 806?*

In *Faretta* the trial court had appointed the public defender to represent defendant although the latter vigorously sought to appear and proceed without counsel in propria persona. The United States Supreme Court held that the denial of self-representation was impermissible under the Sixth Amendment stating in the concluding paragraph of the majority opinion: "In forcing Faretta, under these circumstances, to accept against his will a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense. . . ."[4] (422 U.S. at p. 836 [45 L.Ed.2d at p. 582].)

The majority opinion in *Faretta* does not mandate appointment of "advisory counsel." The question was posed by Mr. Justice Blackmun in his dissent where he said: "[I]f a defendant has elected to exercise his right to proceed *pro se,* does he still have a constitutional right to assistance of standby counsel? . . ." (Italics in original.) (*Faretta* v. *California, supra,* 422 U.S. 806, 852 [45 L.Ed.2d 562, 592].) The majority opinion did not address this question of a right to advisory or standby counsel directly. Instead it expressed permissive approval only in footnote 46 (422 U.S. at pp. 834-835 [45 L.Ed.2d at p. 581]) when it said: "[O]f course, a State *may*—even over objection by the accused—appoint

---

[3]Code of Civil Procedure section 1211 provides in pertinent part: "When a contempt is committed in the immediate view and presence of the court, or of the judge at chambers, it may be punished summarily; for which an order must be made, reciting the facts as occurring in such immediate view and presence, adjudging that the person proceeded against is thereby guilty of a contempt, and that he be punished as therein prescribed."

[4]In *People* v. *McDaniel* (1976) 16 Cal.3d 156 [127 Cal.Rptr. 467, 545 P.2d 843], the state Supreme Court stated *Faretta* "is not to be given retroactive application" (p. 163) and "is to be applied only prospectively in those cases wherein an accused sought or seeks to assert his right of self-representation in a trial which has commenced or will commence after June 30, 1975, the date upon which the decision in *Faretta* was filed." (P. 168.) Here the crimes were committed after the *Faretta* decision was filed which rendered that decision fully applicable.

a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary. [Citation.]" (Italics added.)

The word "may" renders it merely discretionary as to each state and not mandated by law. In *People* v. *McDaniel, supra,* 16 Cal.3d 156, 162, 168 footnote 6, the California Supreme Court noted that *United States* v. *Swinton* (S.D.N.Y. 1975) 400 F.Supp. 805, 807, held that *Faretta* did not give a constitutional right to co-counsel.

Under *pre-Faretta* authority, the California rule was that a defendant is not entitled as a matter of right to have his case presented in court by himself and by counsel simultaneously. (See *People* v. *Sharp* (1972) 7 Cal.3d 448, 459 [103 Cal.Rptr. 233, 499 P.2d 489]; *People* v. *Hill* (1969) 70 Cal.2d 678, 692 [76 Cal.Rptr. 225, 452 P.2d 329]; *People* v. *Mattson* (1959) 51 Cal.2d 777, 787-789 [336 P.2d 937].)

The above rule was extensively discussed in *Mattson, supra,* where the court at page 789 said: "[D]espite the constitutional (art. I, § 13) and statutory (Pen. Code, § 686) provisions that defendant has the right to appear and defend in person *and* with counsel, defendant is not entitled to have his case *presented* in court *both by himself and by counsel* acting at the same time or alternating at defendant's pleasure. [Italics in original.] (*People* v. *Northcott* (1930), *supra,* 209 Cal. 639, 648-650 [6] 651; *People* v. *Mims* (1958), 160 Cal.App.2d 589, 595 [2] [325 P.2d 234].) *So long as defendant is represented by counsel at the trial, he has no right to be heard by himself* (*People* v. *McKinney* (1957), *supra,* 152 Cal.App.2d 332, 336 [6]; *People* v. *Glenn* (1950), *supra,* 96 Cal.App.2d 859, 868; *conversely, when defendant has intelligently declined the aid of counsel he has no right to interrupt the trial with a demand for legal assistance* (*In re Connor* (1940), 16 Cal.2d 701, 709 [8] [108 P.2d 10])." (Italics added.)

In *Sharp, supra,* our Supreme Court in construing the California constitutional amendment (Const., art. I, § 13) and modified statutory language subsequent to *Mattson* concluded neither conferred any right of self-representation. The *Sharp* decision did not undercut the validity of *Mattson* in respect to "advisory counsel." The court in *Sharp* in fact specifically stated in the body of its opinion that "[T]he holding in

*Mattson* . . . is . . . that an accused is not entitled to have his case presented in court by both himself and counsel acting at the same time. . . ." (7 Cal.3d at p. 459.)

I find no California *post-Faretta* statutory or case law authority which authorizes a defendant in a criminal case who has elected to represent himself at the trial to have court-appointed "advisory counsel."

In *People* v. *Harris* (1977) 65 Cal.App.3d 978, 987 [135 Cal.Rptr. 668] (petn. den. by Cal. Supreme Ct. on Mar. 3, 1977), we held that "[t]he California case law, pre-*Faretta* was that a defendant is not entitled to have his case presented in court by himself and by cocounsel simultaneously. . . ." and that "Neither *Faretta* nor subsequent California case law changes . . ." that rule.

Moreover, those federal and other state courts which have considered the issue since *Faretta* have held that there is no federal constitutional right to advisory counsel or hybrid representation.[5]

Here, defendant Miller elected to represent himself after intelligently declining the aid of counsel and then requested the aid of "advisory counsel" which the court granted. I conclude that *Mattson* which *pre*dates *Faretta* and *Harris* which *post*dates *Faretta* control and defendant Miller in the instant case did not have a constitutional, statutory or California decisional right to "advisory counsel" and his request in that respect was improperly granted and should have been denied.

---

[5]Several courts have held that in general the defendant must make a choice between proceeding with counsel and proceeding pro se. (See, e.g., *U.S.* v. *Williams* (8th Cir. 1976) 534 F.2d 119, 123; *Gibbs* v. *State* (Del. 1976) 359 A.2d 164, 166; *People* v. *Heidelberg* (1975) 33 Ill.App.3d 574 [338 N.E.2d 56, 69]; *U.S.* v. *Wolfish* (2d Cir. 1975) 525 F.2d 457, 462-463.)

Only one jurisdiction, Kentucky, has construed the United States Constitution as giving the pro per defendant a right to advisory counsel, and that holding predates *Faretta.* (See *Wake* v. *Barker* (Ky. 1974) 514 S.W.2d 692, 696.) Several courts have decided that there is no right to "hybrid" representation. Hybrid representation involves the defendant assisting counsel, rather than counsel advising a defendant who has elected to proceed pro se. Without exception, those courts which have considered the question have held that a defendant has no such right to hybrid representation. (See *U.S.* v. *Williams, supra,* 534 F.2d 119; *U.S.* v. *Hill* (10th Cir. 1975) 526 F.2d 1019, 1024-1025; *Gibbs* v. *State, supra,* 359 A.2d 164; *Stiner* v. *State* (Okla. 1975) 539 P.2d 750, 753; *Callahan* v. *State* (1976) 30 Md.App. 628 [354 A.2d 191, 194-195]; *U.S.* v. *Swinton, supra,* 400 F.Supp. 805, 806, especially absent some indication of special need; see also, *U.S.* v. *Lang* (4th Cir. 1975) 527 F.2d 1264, 1265.)

*Did the trial court properly exercise its "inherent power" by appointing attorney Chaleff to act as "advisory counsel" for defendant Miller?*

Here, as previously noted, the record reflects that the trial court inquired of defendant Miller as follows: "[I] take it that you're asking the Court to appoint a lawyer to act as advisory counsel. [¶] Is that correct?" The defendant responded: "Yes, that's correct." Thereafter the court stated: *"Very well, the public defender is appointed as advisory counsel to aid the defendant if and when he requests help* AND *to be available to represent the defendant should the Court find it necessary at any time to terminate the defendant's right of self-representation to the misconduct of the defendant . . . and this Court's inherent power to conduct this proceedings in an orderly and expeditious manner."* (Italics added.)

Thus the court below in addition to granting defendant Miller's request for "advisory counsel" and appointing attorney Chaleff as "advisory counsel" added to his duties (in the conjunctive *"and"*) the obligation to serve as "standby counsel." The court relied for authority on its "inherent power to conduct this proceedings in àn orderly and expeditious manner."

I conclude that while the trial court may have properly exercised its nherent power in appointing attorney Chaleff as "standby counsel" it (the court) improperly exercised that power by ordering attorney Chaleff to serve as "advisory counsel."

The distinctions between the duties performed by "advisory"[6] and "standby"[7] counsel are real and could have a long range impact on the orderly and efficient administration of justice, especially in light of the Pandora's box opened by *Faretta.*

In my view to have, as here, an in propria persona defendant who has "intelligently declined the aid of counsel . . . interrupt the trial" (*People v. Mattson, supra,* 51 Cal.2d 777, 789) by whispering with "advisory

---

[6]I construe the term "advisory counsel" to mean an attorney who is present in the courtroom at the defendant's side, does not speak for him, and does not participate in the conduct of the trial but only gives him legal advice.

[7]I construe the term "standby counsel" to mean an attorney who is present in the courtroom and follows the evidence and proceedings but does not give legal advice to the defendant. He "stands by" in the event it is necessary for the trial court to revoke defendant's in propria persona status or even remove the defendant from the courtroom because of disruptive tactics so the case may proceed in an orderly manner to verdict.

counsel" throughout the trial could, in the long run, result in an unwise policy in that it would tend to impede rather than insure an orderly, expeditious, and efficient administration of justice. A defendant appearing in propria persona has elected to represent himself. *He is his own counsel.* He should not be allowed to have it both ways. To hold otherwise would tend to circumvent *Mattson* as hereinbefore discussed.

Furthermore, why should an indigent defendant who has elected to represent himself be furnished "advisory counsel" at public expense?[8] I am aware of no persuasive argument for affording *indigent* defendants in criminal cases greater rights, at public expense, than *nonindigent* defendants who have to pay for their own counsel.

Clearly, a *nonindigent* defendant can hire private counsel who controls the case during the trial and an *indigent* defendant is afforded appointed counsel (usually a public defender or private counsel in the event of a conflict) at public expense to represent him during the trial. Also, a *nonindigent* defendant has the right to appear in propria persona as does an *indigent* defendant under *Faretta*. While a *nonindigent* defendant may appear in propria persona and also could theoretically retain private counsel to serve in an "advisory" capacity and sit beside him at the counsel table with the court's permission, such a situation has been so rare as to be practically nonexistent.

Moreover, the court itself should not need to expend additional public funds appointing "advisory counsel" merely for it (the court) to avoid committing error as insinuated by defendant Miller.[9] That is the court's job.

### CONCLUSION

Accordingly, since I have concluded that the defendant has no right to "advisory counsel" and the court improperly appointed attorney Chaleff

---

[8]Here the record reflects defendant Miller had his own reasons for wishing to appear in propria persona and was manipulating the court to achieve those ends. However, the special jail privileges afforded in propria persona defendants, i.e., library privileges, telephone calls, etc., may generate motions seeking in propria persona status by *indigent* defendants while in custody awaiting trial. The supplying of "advisory counsel" could well increase such motions and work adversely to the efficient administration of justice.

[9]See footnote 2, *ante,* page 727.

to serve in that capacity, he (attorney Chaleff) cannot be held in contempt for refusing to perform a duty which the court was unauthorized to order.

I would therefore declare null and void the minute order of December 23, 1975, adjudging petitioner guilty of contempt of court and imposing punishment.[10]

---

[10]To the extent that the case of *Ligda* v. *Superior Court* (1970) 5 Cal.App.3d 811 [85 Cal.Rptr. 744], may be construed to be contrary to the views expressed herein, I disagree. Taking a broad overview, what may have been a sound *pre-Faretta* result in *Ligda* in Solano County in 1970 is not necessarily a sound *post-Faretta* result in *Chaleff* in Los Angeles or any county in 1975.

Moreover, *Ligda* is factually distinguishable from the case at bench. Paul Ligda was the county public defender (Solano County) and the superior of Deputy Public Defender Stephen R. Camden initially who represented the defendant in the case of People v. Johnson (George Washington). Defendant Johnson requested the court for permission to appear in propria persona. Attorney Camden, the deputy public defender, told the court: "[I]f Mr. Johnson's motion is granted and he is allowed to proceed pro per, I would at any time he asked me for legal advice, I would be glad to give him the information he requests or any of my legal knowledge that he may need in preparing for his trial." (5 Cal.App.3d at p. 818.) The trial court granted defendant Johnson's motion to represent himself and said: " 'Furthermore, if you wish legal assistance you may make a date with Mr. Camden. At this time he has indicated his willingness to provide any continuing counsel if you wish his assistance during trial, to be present, and you may have that.' " (*Id.*, at p. 818.) Later Attorney Camden was ordered to serve as "advisory counsel" and Mr. Ligda obtained a temporary restraining order forbidding the trial court from compelling Attorney Camden to remain in court. The reviewing court discharged the alternative writ of prohibition and denied the peremptory writ.

In the case at bench attorney Chaleff never volunteered to serve as "advisory counsel" and respectfully declined to act in that capacity when ordered by the court. In addition, in *Ligda* Attorney Camden's offer to provide continuing legal advice to defendant Johnson may have been an important factor the court considered in granting the defendant in propria persona status.